# Henderson v. The State.

## Murder.

(Decided June 4, 1913.  65 South. 721.)

1. *Homicide; Contributing Cause.*—A defendant may be guilty of homicide if the knife wound which he inflicted contributed to hasten the death or contributed to the death of decedent, although death would not have inevitably followed from the knife would alone, and although there was no preconcert or community of purpose between him, after he had stabbed. the deceased, and the one who shot the deceased.

2. *Same.*—Although the knife wound inflicted by defendant did not contribute to his death, yet if there was a preconcert or community of purpose between defendant and his son, who shot the deceased after defendant had stabbed him, defendant would be responsible for the act of his son, and consequently might be guilty of the homicide, though they intended only a battery on deceased, unless the son acting independently of the common purpose, did the killing from malice and motive of his own,· and was not at the time purposely incited thereto by defendant.

3. *Same; Justification.*—The burden is not upon the state of proving lack of justification or excuse for the commission of a homicide.

4. *Same; Aiders and Abettors; Prior Intention; Necessity.*—As rendering defendant responsible for the act of his son in shooting deceased, and guilty of homicide, no unlawful intention of defendant need have existed prior to the time of the difficulty; it is enough if such intention then existed, and defendant then in any way aided and abetted his son by purposely inciting him, either by menaces, gestures, words or acts to do the shooting.

5. *Charge of Court; Singling Out Evidence.*—A charge asserting that certain evidence must be considered is properly refused for singling out and giving undue prominence to parts of the evidence.

6. *Same; Covered by Those Given.*—Where the charges refused to defendant are fully covered by written instructions given at his request, error will not be imputed.

7. *Same; Submitting Legal Questions to Jury.*—A charge to acquit if the jury have a reasonable doubt as to whether a defendant acted in self-defense, refers to the jury to determine what constitutes self-defense, and is properly refused.

8. *Appeal and Error; Harmless Error; Remarks of Court.*—Where the court subsequently withdraws from the jury and directs them not to consider remarks previously made by the court, any error in such remarks is cured.

9. *Same; Review; Record.*—Where the record shows only that objections were made to the remarks of the solicitor, but does not

[Henderson v. The State.]

show what, if any, action the court took thereon, such matter is not presented for review.

10. *Witnesses; Competency; Knowledge.*—Where on cross-examination a witness stated that he did not know before the killing where defendant's house was, and that he went out to take the measurements, and somebody told him where defendant lived, such answer did not disclose but that, at the time of the trial he knew of his own knowledge where defendant's house was, and hence was testifying to a matter within his own knowledge when he stated the distance from the store of deceased to the house of defendant.

11. *Same; Age and Maturity.*—It cannot be held that the court erred in holding as competent a witness, who on his voir dire stated that he did not know what an oath was, that he was eleven years old and yet stated that he knew he was sworn to tell the truth, that he meant to tell the truth, that the truth was to mean what you say, and that people who tell lies go to the bad man, and burn up when they die.

Appeal from Montgomery City Court.

Heard before Hon. Armstead Brown.

Joe Henderson was convicted of murder in the second degree, and appeals. Affirmed.

The facts sufficiently appear from the opinion of the court. The following are the charges refused:

(15) The court charges the jury that, in order to hold one criminally responsible for a homicide committed by another, there must have been a conspiracy or concert between them, and the deed must have been done in furtherance thereof, and it must have been within the common object or purpose. (18) The court charges the jury that a man should not be convicted of murder where the jury have a reasonable doubt, growing out of the evidence, as to whether his act caused the death of deceased.

These two charges are in effect the same as charges 19, 11, "11," 12, and J.

(14) The court charges that the burden of proving lack of justification or excuse for the commission of murder is upon the state, and, unless the state has proved that there was no justification or excuse for the killing of Jim Royal, then you must acquit defendant.

(24) The court charges that the evidence of the good character for peace and quiet of defendant, and of the bad character of deceased for violence and turbulence, is a matter which must be considered by the jury in making up their verdict, unless they disbelieve the evidence of the witnesses who testified on these matters.

(4) The court charges the jury that each juryman must be separately satisfied, beyond a reasonable doubt and to a moral certainty, that defendant is guilty of the crime charged, or you cannot convict him.

Given charge is as follows:

The court charges the jury that the only foundation for a verdict of guilt in this case is that the entire jury should believe from the evidence, beyond a reasonable doubt and to a moral certainty, that the defendant is guilty, to the exclusion of every probability of his innocence and reasonable doubt of his guilt; if the state has failed to furnish this measure of proof, and so impress the minds of the jury of defendant's guilt, the jury should find defendant not guilty.

Refused charge 13:

If the jury have a reasonable doubt, generated by all the evidence in the case, as to whether defendant acted in self-defense or not, then they should acquit.

(20) The court charges the jury that, before you can find that a conspiracy existed between John and Joe Henderson, you must believe that the original intention of Joe Henderson was unlawful and was prosecuted by unlawful means.

While Pauline Royal was being examined on cross, defendant's counsel asked her "if, at the time of the killing, you had spoken to your lawyer to get a divorce from him on account of cruelty." Objection was made by the state and sustained by the court, with the remark that the same was immaterial, as this would not give

[Henderson v. The State.]

any one the right to kill deceased. Later on the court said:

I want to withdraw the remark that I made in discussing the materiality of the evidence—some remark about the character of the deceased man in relation to his wife—not giving the right to anybody to kill him; it was not intended for you, and I withdraw it from your consideration.

TILLEY & ELMORE, for appellant. The remarks of the court were error to reversal, and was not cured by being afterwards withdrawn.—*Parrish v. State,* 139 Ala. 47. The witness Ogburn was clearly not a competent witness.—*Jones v. State,* 145 Ala. 51; *White v. State,* 136 Ala. 58. The measurements taken by the witness Johnson from the supposed home of defendant were improperly admitted.—Authorities next above. Charge 4 should have been given.—*Parker v. State,* 59 South. 518; *Hale v. State,* 122 Ala. 89; *Carter v. State,* 103 Ala. 93. Charge 15 should have been given.—*Tanner v. State,* 92 Ala. 1; *Pierson v. State,* 99 Ala. 152; *Evans v. State,* 109 Ala. 11. Charge 18 should have been given.—Wharton on Homicide, 30 et seq. Charge 20 should have been given.—*Williams v. State,* 81 Ala. 7; *Pierson v. State, supra.* Charge 19 should have been given.— Wharton on Homicide, 45, note 2. Charge 8 should have been given.—*Morris v. State,* 146 Ala. 97; *Walker v. State,* 67 L. R. A. 426. Counsel discuss charges 10, 11, 12 and 14, but without citation of authority. Charge 24 should have been given.—*Karr v. State,* 100 Ala. 6; 14 Enc. of Evid. 121. Defendant was entitled to the affirmative charge.—*Morris v. State, supra.*

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State.

THOMAS, J.—The defendant, jointly with his son, was indicted for murder in the first degree, was tried separately, and was convicted of murder in the second degree and given a sentence of ten years in the penitentiary.

The evidence tended to show, among other things, as follows: That, for some time prior to the difficulty, a state of bad feeling existed between defendant and deceased; that deceased conducted a little store about 650 feet from where defendant lived; that defendant's wife and son went over to this store in the morning before the fatal difficulty that happened that afternoon, and that they, after returning home, reported to defendant that deceased had used abusive and insulting language to them while at the store; that upon receiving such report the defendant went to the store and approached deceased, who was then in front of the store, about the matter; that the parties then went inside the store, and that while in there the fatal difficulty commenced, the deceased seizing a shotgun sitting in the store, which defendant then knocked out of his hands, receiving from its discharge a slight wound in the hand; that the parties then grappled and fought together and in the struggle got out in front of the store on the platform and fell fighting together, the deceased having no weapon, but the defendant having a pocketknife, with which, during the difficulty, either before or after the parties fell, he cut deceased three times, the most serious wound produced being one near the navel, which penetrated the abdominal cavity, causing the intestines to protrude; that while the combatants were down on the ground still fighting, deceased having already received these knife wounds, defendant's son, who had just before the difficulty, as said, reported to defendant the mentioned insults offered him and his mother by de-

ceased at the latter's store that morning, came running up from defendant's house, some 650 feet distant, as said, with a shotgun, and fired it into the body of deceased, inflicting upon him a gunshot wound between the third and fourth ribs. Deceased died shortly thereafter. There was evidence tending to show also that the gunshot wound, so inflicted by defendant's son was the immediate cause of the death, but that the knife wound, so previously inflicted by defendant, accelerated it, and that the latter named wound alone would likely have produced death.

Under the law, if the jury believe from the evidence beyond a reasonable doubt that the knife wound inflicted by the defendant contributed to the death of deceased, then defendant would be guilty of the homicide, notwithstanding the jury may not have believed that death would have inevitably followed from such knife wound alone, and notwithstanding they may not have believed that there was any preconcert or community of purpose between defendant and his son.—*Daughdrill v. State*, 113 Ala. 34, 21 South. 378; *Jordan v. State*, 79 Ala. 9. And, although the jury may not have believed that said knife wound contributed in the least to the death of deceased, yet, if they did believe from the evidence, beyond a reasonable doubt, that there was preconcert or community of purpose between the defendant and his son, this would render the defendant responsible for the act of his son in killing the deceased, although they intended only a battery upon him, and would warrant a verdict of guilty against defendant, unless the son acted independently of the common purpose and killed the deceased from malice and motives of his own, and was not at the time purposely incited thereto by defendant. The following authorities so amplify and definitely apply these propositions to states of facts similar to those here that a further discussion in this

particular is rendered unnecessary:—*Jordan v. State,* 79 Ala. 9; *Jordan v. State,* 81 Ala. 32, 1 South. 577; *Jordan v. State,* 82 Ala. 1, 2 South. 460; *Martin v. State,* 89 Ala. 119, 8 South. 23, Am. St. Rep. 91; *Amos v. State,* 93 Ala. 4, 3 South. 749, 3 Am. St. Rep. 682; *Tidwell v. State,* 70 Ala. 33; *Tanner v. State,* 92 Ala. 1, 9 South. 613; *Brunson v. State,* 124 Ala. 37, 27 South. 410; *Frank v. State,* 27 Ala. 42; *Tally's Case,* 102 Ala. 25, 15 South. 722; *Morris v. State,* 146 Ala. 88, 41 South. 274; *Givens v. State,* 8 Ala. App. 127, 62 South. 1020; *Smith v. State,* 8 Ala. App. 192, 62 South. 575; *Williams v. State,* 81 Ala. 7, 1 South. 179, 60 Am. Rep. 133; *Pierson v. State,* 99 Ala. 152, 13 South. 550; *Evans v. State,* 109 Ala. 16, 19 South. 535.

Under these authorities and the tendencies of the evidence as before given, and the inferences afforded by that evidence, we are clear, not only that the affirmative charge was properly refused, but also that all charges were properly refused that predicated an acquittal of defendant upon the nonbelief by the jury of one of these two theories of defendant's guilt and that ignored the other. This latter vice is apparent in refused charges 15, 18, 19, 11, "11," 12, and J, and it is unnecessary, therefore, to determine whether or not they are also otherwise objectionable.—*Rigsby v. State,* 152 Ala. 9, 44 South. 608.

Charge 14 does not correctly state the law, and was properly refused.—*Cleveland v. State,* 86 Ala. 1, 5 South. 426; *Lewis v. State,* 88 Ala. 11, 6 South. 755; 1 Mayf. Dig. p. 810, §§ 16, 17; *Pugh v. State,* 132 Ala. 6, 31 South. 727; *Davis v. State,* 8 Ala. App. 148, 62 South. 1027.

Charge 24 is faulty, if for no other reason, because it singles out and gives undue prominence to a part of

the testimony.—*Stone v. State,* 105 Ala. 60, 17 South. 114; 1 Mayf. Dig. p. 170, § 13.

Practically the same charge as charge 4 was approved in the following cases, to wit:—*Crimes v. State,* 105 Ala. 86, 17 South. 184; *Leonard v. State,* 150 Ala. 94, 43 South 214; *Hale v. State,* 122 Ala. 89, 26 South. 236. However, the court will not be put in error for refusing the charge, as it was fully covered by written charge 6, given at defendant's request.

Written charge 13 was properly refused, because, if for no other reason, it refers questions of law to the determination of the jury; that is, it refers to the jury the question as to what constitutes self-defense.—*Davis v. State,* 8 Ala. App. 148, 62 South. 1027.

It is unnecessary to pass on refused charges 8, 9, and 10, because, even if each is a good charge, it was fully covered by given charges 17, 21, and 22.

Charge 20 was properly refused. No unlawful intention on the part of the defendant need have existed prior to the time of the difficulty itself. It is sufficient to hold him responsible for the act of his son if such unlawful intention then, at the time of the difficulty, existed, and if he then at such time in any way aided and abetted his son by purposely inciting him, either by means, gestures, words, or acts, to do the shooting.—*Morris v. State,* 146 Ala. 96, 41 South. 274.

The error committed by the court in its remarks made during the progress of the trial, and to which an exception was reserved, was subsequently cured by the act of the court in withdrawing such remarks from the consideration of the jury.

Objection was interposed by defendant to remarks made by one of the state's counsel during the examination of a witness; but the record does not disclose what action, if any, was taken by the court thereon; that is,

whether the objection was sustained or overruled. Hence there is nothing presented for review in this particular.

The state introduced as a witness one Johnson, a deputy sheriff, who testified among other things, that he reached the scene shortly after the fatal difficulty, examined deceased's store, and measured the distance from the store to defendant's house, and that such distance was 650 feet, etc. On cross-examination defendant's counsel asked the witness this question, "You did not know where defendant's house was before the killing?" To this the witness replied, "No." Counsel then further asked, 'You went out to make the measurements, and somebody told you where defendant lived?" To this the witness replied, "Yes, sir." The bill of exceptions recites that "defendant's counsel then moved to exclude the evidence of the witness as to the distance from defendant's house to the store, on the ground that it was not proved that the house in question was defendant's house," which motion the court overruled. The witness on his direct examination stated, as said, as a fact that he measured the distance to defendant's house. It may well be that he did not know at the time he did the measuring where defendant lived, except by hearsay, but it may well also be that at the time of the trial, when he was testifying, he knew of his own knowledge that the house previously pointed out to him as defendant's house, the distance to which he so measured, was defendant's house. If so, he was testifying to a matter within his own knowledge, when he swore that the distance from deceased's store to defendant's house was 650 feet. The cross-examination did not therefore disclose but what, at the time of the trial, the witness knew of his own knowledge defendant's house, and the court cannot be put in error for overruling the motion mentioned.

[Coon v. The State.]

The state's witness Alphonso Ogburn testified on the voir dire examination that he was 11 years old, and, while he stated that he did not know what an oath was, yet he further stated that he knew he was sworn to tell the truth; that he meant to tell the truth; and that the truth was "to mean what you say," and that people who tell lies "go to the bad man" when they die and "burn up." We are unable to say that the court erred in overruling the objection to the competency of the witness. In *Williams v. State,* 109 Ala. 64, South. 530, our Supreme Court upheld the competency of the witness on a state of facts no stronger than that here.

We find no error in the record, and the judgment of conviction is consequently affirmed.

Affirmed.