## OLLIE PITTS v. STATE.

No. A-8206.  Jan. 23, 1932.
Rehearing Denied Feb. 26, 1932.

(8 Pac. [2d] 78.)

J. A. Bass and James H. Mathers, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Oklahoma county of the crime of manslaughter in the first degree in the killing of Le Roy McKenzie, and his punishment fixed by the court at imprisonment in the state penitentiary for a period of 25 years.

Defendant contends first that there is a fatal variance between the information, which charged the defendant with the killing of McKenzie by means of a pistol, and the evidence, which showed that death was produced by a knife wound.

In substance, the evidence of the state was that defendant struck the deceased several times with some blunt wooden instrument and then shot him; that two shots were fired, one in the body of deceased near the right nipple, coming out under the arm and penetrating the lung; that after the first shot deceased started to fall, and that deceased struck the pavement after the second shot and never moved after that, and that witnesses who reached him in a few minutes found him dead; that, when the officers arrived at the scene of the killing, defendant approached them, handed them his pistol, and said he had killed the deceased. The undertaker, a colored man, in testifying described the wounds as being a knife wound over the heart and gunshot wounds as above stated, with numerous bruises and contusions on the head. On cross-examination he was asked:

"Q. You say he was shot left of the right nipple? A. Yes, sir. Q. Did that penetrate any vital organ? A. Yes, sir, it would penetrate the lung. Q. Was that wound sufficient to cause death instantly? A. No, we have lots of cases—Q. (Interrupting) Just answer that. Was that shot sufficient to cause instant death? A. I don't think so. The Court: I think the question calls

for a yes or no answer. The objection is overruled. Answer the question. A. Well, Your Honor, Judge, lots of people are shot in the lung. Some die and some don't. Q. It isn't other people; the question is in this case, was this particular wound? A. I am not sure."

Defendant contends that the state was bound to show that death was caused by the gunshot wounds, because it was so alleged in the information, while the knife wound in the heart necessarily must have been the fatal wound.

Defendant overtakes the fact that the undertaker did not make a critical examination of the body until more than 12 hours after the homicide, and does not testify that the knife wound had anything to do with causing the death of deceased.

Defendant cites 30 Corpus Juris, pages 135, 136; State v. Willson, 113 Or. 450, 230 Pac. 810, 233 Pac. 259, 39 A. L. R. 84, and numerous other authorities supporting the rule that the allegations and proof must correspond, and that, where the allegation is that death was produced by one instrument and the proof shows the death to have been caused by a different instrument, there is a fatal variance.

The authorities cited are in point in a case of that character, although that rule has been modified by later cases; but the case at bar does not fall within that rule for the reason that the evidence of the state supports the allegations of the information that death was caused by gunshot wounds. There is no evidence in the record that death was caused by any other instrument. Counsel merely infers from the fact that there was a knife wound over and into the heart that death must necessarily have come before the infliction of the other wounds and must

have caused the death of deceased, while the evidence of the state is to the contrary.

There is another rule which defendant overlooks in his brief stated by Wharton on Homicide (3d Ed.) page 37:

"The test as to the guilt of the person inflicting the first wound in such case is whether, when death occurred, the first wound contributed to the event. If it did, although other independent causes also contributed, the causal relation between the unlawful acts of the accused and the death are made out. If the life current went out from both wounds, so that at the very instant of death the first wound was contributing to the event, the one who inflicted it is criminally responsible."

In People v. Lewis, 124 Cal. 551, 57 Pac. 470, 45 L. R. A. 783, in paragraph 3, the Supreme Court of that state says:

"Defendant inflicted a mortal wound on the person of deceased by shooting him. After the shooting, and while in great pain, deceased cut his own throat, thereby hastening his death. Held, that if the wound inflicted by defendant contributed, concurrently with the wound inflicted by deceased, to cause death, defendant is guilty of the homicide."

Wharton on Homicide (3d Ed.) page 45, it is said:

"Death following a wound from which death might ensue, inflicted with murderous intent, is presumed to have been caused by such wound, and the burden rests upon the party inflicting it to show to the satisfaction of the jury that death did not result therefrom, but from some other cause."

The trial court on its own motion gave instruction No. 9, which reads as follows:

"You are instructed that if you believe and find from

the evidence in this case, beyond a reasonable doubt, that the defendant, Ollie Pitts, in Oklahoma county, state of Oklahoma, on the 31st day of July, 1930, then and there being, did then and there unlawfully, wrongfully and feloniously, without authority of law and with a premeditated design to take the life of one Leroy McKenzie, shoot the said Leroy McKenzie with a certain 38 calibre pistol, then and there loaded with gunpowder and metal bullets and then and there inflicting upon the body of the said Leroy McKenzie by said shooting certain mortal wounds of which the said Leroy McKenzie did instantly die, as was intended by the said defendant, then and in that event it will be your duty to return a verdict finding the defendant guilty of the crime of murder; unless you should find that at the time of said killing the act of killing was justifiable, or you have a reasonable doubt thereof, in which case it will be your duty under the law to give the defendant the benefit of such doubt and acquit him, and you will so say by your verdict."

From this instruction it is to be seen that the jury said in returning their verdict of manslaughter in the first degree that the defendant killed deceased with a pistol. Neither the state nor the defendant having offered any evidence that the deceased died as a result of any other wounds than gunshot wounds, there is no variance between the allegations of the information and the proof.

Defendant next urges that the court erred in overruling the demurrer of defendant to the evidence of the state.

This contention is without any merit.

Defendant next urges that the court erred in refusing to give certain requested special instructions offered by the defendant.

The theory upon which defendant argues that these instructions are erroneous is that, since the evidence of

the state showed that deceased came to his death by means of a knife wound instead of gunshot wounds, therefore the requested instructions should have been given.

There is no evidence in the record to support the requested instructions, and it was not error for the trial court to refuse to give the same.

Next defendant contends that the court erred in a statement made to the jury with reference to the admission of other wounds on the body of deceased, which statement reads as follows:

"This evidence was admitted with reference to the wounds on the body of the deceased, which included the wounds upon the head and ear, and the wounds in the breast, two wounds in the breast, upon the theory that the wounds were all produced at one and the same difficulty, by the use of different instruments, which is part of what is known in law as the 'res gestae' part of the same transaction. The court will overrule the objection of counsel for defendant and permit counsel to discuss that angle of it purely from the standpoint that it was part of the same transaction and grew out of the same difficulty. Exception reserved by defendant."

In Foster v. State, 39 Tex. Cr. R. 399, 46 S. W. 231, that court said:

"Where the indictment for assault with intent to murder charged it as made with certain instruments other than an ax handle, it was not error to admit evidence of an assault with an ax handle as a part of the res gestae, where the jury were explicitly instructed that they could convict only for an assault with the instruments named in the indictment."

Defendant argues that this statement of the court is contrary to instruction No. 9, which required the jury to

find beyond a reasonable doubt that defendant killed deceased by means of gunshot wounds.

In Acker v. State, 26 Ariz. 372, 226 Pac. 199, that court said:

"In prosecution for murder charged to have been produced by blows upon head, evidence of knife wounds found on deceased's body held not only proper, but to help rather than hurt accused."

In the body of the opinion the court said:

"Appellant assigns a number of errors which he says were committed in the trial of this cause. Evidence of the knife wounds found on the body of Enge was objected to, because death was alleged in the information to have been produced by blows upon the head. The evidence of the knife wounds appeared in the testimony of the condition in which Enge was found. The county attorney very properly gave to the jury all the evidence which seemed to throw any light upon the means by which Enge came to his end, and the circumstances and conditions in which he was found. * * * The introduction of the evidence was not only proper, but it tended to help rather than hurt the defendant. This assignment of error is frivolous."

In People v. Kafoury, 16 Cal. App. 718, 117 Pac. 938, that court said:

"Where, after accused had shot complainant and shattered her hip bone, he dragged her into an adjoining room, threw her on the floor, and with his knees on her chest choked her until she lost consciousness, a physician who attended her immediately after the assault was properly permitted to testify that she suffered a miscarriage as the result of both assaults, in a prosecution for assault with intent to murder; the second assault and its attending circumstances being essentially a part of the res gestae of the first."

In the case at bar the court did know that the bullet wounds came from the defendant, but did not know positively that the knife wound did. The court did know, however, that it all occurred during this difficulty, but the court did not state that defendant did the stabbing. He merely stated that all of this happened during the same difficulty. Since the court had told the jury that they must find beyond a reasonable doubt that the death was caused by the gunshot wounds inflicted by defendant, he could not have been injured by the statement of the court that these other wounds were merely admitted as a part of the res gestae.

The other errors complained of by defendant arise out of his contention that the evidence of the state showed the death to have been caused by knife wounds rather than gunshot wounds.

Defendant next contends that the county attorney was guilty of misconduct in his argument to the jury.

An examination of the record discloses that in most of the matters complained of the county attorney was drawing proper deductions from the evidence. Bouie v. State, 9 Okla. Cr. 345, 131 Pac. 953; Spann v. State, 19 Okla. Cr. 9, 197 Pac. 531.

Defendant specifically complains of the following statement of the county attorney:

"Gentlemen of the Jury, the colored race have to be taught that they cannot go about and commit crimes."

Defendant objected to this statement, and thereupon the court sustained the objection and instructed the jury to disregard the statement of counsel. Both defendant and deceased were negroes. This was not an appeal to race

prejudice. While the statement was improper, it was not of such character as to require a reversal of the case.

In Smith v. State, 6 Okla. Cr. 380, 118 Pac. 1003, this court said:

"Although the county attorney may have indulged in improper remarks in his closing address to the jury, yet, if such remarks, when objected to, are withdrawn from the consideration of the jury by the trial court, and there is no reason to believe in the light of the evidence that the defendant suffered injury thereby, such remarks will not be ground for a new trial."

The case was sharply contested. Counsel for defendant and the state have filed voluminous and able briefs in this court. We have carefully examined the record and the briefs and find no error in the record sufficient to require a reversal of the case.

The cause is therefore affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.