487 So.2d 962 (1985)
Gissiander Clifford WRIGHT
v.
STATE.
1 Div. 793.
Court of Criminal Appeals of Alabama.
February 12, 1985.
On Return to Remand October 22, 1985.
Rehearing Denied January 28, 1986.
Certiorari Denied May 2, 1986.
*963 Stephen K. Orso, Mobile, for appellant.
Charles A. Graddick, Atty. Gen., and Jean Alexandra Webb, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 85-541.
LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence on a jury trial on an indictment that charged in pertinent part the following:
"GISSIANDER CLIFFORD WRIGHT... did in the course of committing a theft of lawful currency of the United States of America, the specific denomination(s) of said currency being unknown to the Grand Jury, of the approximate aggregate value of five hundred dollars ($500.00), the property of Winn-Dixie Louisiana, Incorporated, a corporation, used or threatened the imminent use of force against the person of Jane McCall, with intent to overcome her physical resistance or physical power of resistance, in violation of § 13A-8-43 of the Code of Alabama."
Alabama Criminal Code, § 13A-8-43, provides:
"(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
"(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
"(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.
"(b) Robbery in the third degree is a Class C felony."
At a duly conducted sentence hearing, after the State had given defendant notice it would proceed against him under the Habitual Felony Offender Act, it was shown he had been previously convicted of three or more felonies. The court sentenced him to imprisonment for life, which is within the permissible limits, as provided by § 13A-5-9(c)(1), which states:

*964 "On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years; ..."
At the close of the State's case, defendant moved for a judgment of acquittal, alleging in the motion that the State had failed "to prove a prima facie case against the appellant ... and had failed to present sufficient evidence to prove the allegations of the indictment." The trial court denied defendant's motion, and such action is made the basis of the fourth issue presented by appellant, by which he contends the trial court committed reversible error. We think it appropriate to consider this issue first and thereby give a brief resume of the material evidence presented by the State before it rested its case.
Ms. Shirley Jean McCall testified she was working for Winn-Dixie on Broad Street in Mobile on May 2, 1983, at cash register No. 6 and that while she was making change for a lady in the line, the following occurred:
"A. I was making change and all of a sudden this guy had walked up behind me and pushed me over the side of the register.
"Q. Stop right there. You say he walked up beside you?
"A. Behind me. I don't know whether he'd walked or ran or what, but when I realized it he had pushed me.
"Q. You were facingIf you could imagine that I'm you on that particular day; I have got the cash register in front of me and I'm looking toward the back of the store
"A. Right.
"...
"Q. What happened as you were making change for the lady?
"A. He walked up behind me and pushed me and started taking money out of the register.
"Q. All right. Stop right there. Someone pushed you?
"A. Right.
"Q. Do you know whether you were pushed withWere you pushed with hands?
"A. Yes.
"Q. Do you know whether it was one or two hands?
"A. It felt like both hands.
"Q. Was it a hard push or a soft push?
"A. It was just enough to knock me off balance. You know, get me out of the way.
"Q. All right. Did you happen to look at this person?
"A. Yes.
"Q. How did you look at this person?
"A. Well, when I was giving the lady her change and I recognized some hands in my drawer, and I turned around and he was taking money out of my register as I turned around.
"Q. Was this after he pushed you?
"A. Right.
"Q. Okay. Did you look at this person in the face?
"A. Right.
"Q. Do you see that person in court today?
"A. Right.
"Q. Where is that person?
"A. Sitting right there.
"Q. Are you identifying this person right here?
"A. Yes, sir.
"MR. McGREGOR [State's counsel]: Let the record reflect, please, that the defendant has been identified.
"Q. Had you ever seen that person before?
"A. No.
"Q. How far was he from you?
"A. Well, about from here to here, because he was right up on me when I turned around.
"Q. You have indicated a distance of approximately three and a half feet?
"A. Maybe, if not closer.
"Q. All right. Did you get a good look at his face?
"A. Yes, sir.
"...

*965 "Q. For approximately how long?
"A. For a momentary second.
"Q. For more than one second?
"A. Yes.
"MR. ORSO [Defendant's attorney]: Judge, that's not what she said. She said a momentary second.
"THE COURT: And he is asking her to explain what she meant.
"Q. For approximately how long?
"A. Well, maybe two or three seconds or something like that.
"Q. Okay. What did you do after you were pushed?
"A. Well, like I said, I turned around and I saw him taking the money and I realized it and I hollered for my manager.
"Q. This was money from the cash drawer?
"A. Right.
"Q. Who was your manager?
"A. Mr. Sellers.
"Q. Did you scream?
"A. Yeah. I just hollered, I said, `He is taking my money.' I said, `Mr. Sellers he is taking my money.'
"...
"Q. Go back to when he pushed you. Did he knock you off balance?
"A. Yes.
"Q. And then you looked around and saw the hands in the cash register?
"A. After I got my balance, I turned back around and he was still getting the money out.
"Q. How far over did he knock you?
"A. Just over the counter. I caught myself on the counter.
"Q. You had to brace yourself with your hands?
"A. Right."
Mr. Nelson Sellers, the store manager of Winn-Dixie, testified he was in the store on May 2, 1983, and saw a man in the line at one of the cash registers a short while before Ms. McCall screamed, a man who was afterwards identified to him as Gissiander Clifton Wright, the defendant, and whom the witness identified as the defendant on the trial of the case. Mr. Sellers further testified that after he had chased the man out of the store for quite a distance, Mr. Sellers returned to the store and soon after the police came, Mr. Sellers checked out the "computer register" and determined "about a Hundred Dollars in cash and Four Hundred Dollars in food stamps," were missing from the register.
In the brief of counsel for appellant in support of his contention that the trial court committed reversible error in denying defendant's motion for a judgment of acquittal at the conclusion of the State's case, it is stated:
"... It is the Appellant's position that not only was there no attempt to overcome resistance; but further, there was not a sufficient degree of force used to fall within the ambit of § 13A-8-43 of the Code. There was only a slight push or touch involved here, and, it further appears the victim made no attempt whatsoever to resist the robber, such that the robber's actions were not made with the intention to overcome any `physical resistance or physical power of resistance.'"
Without being fully persuaded the appellant is correct as to this contention, we note that questions and answers between attorneys and Ms. McCall partly consisted of body language, including demonstrated distances between places, viewable by the trial judge but unobservable on appeal. Taking this into consideration, we are unable to conclude the trial court was in error in denying defendant's motion for a judgment of acquittal at the conclusion of the State's case. We note also at this point that no witness testified on behalf of defendant to the effect that "only a slight push or touch" was involved, as contended by appellant, and, at the conclusion of the trial of the case, no exception was taken by defendant to the oral charge of the court and no written request was made by defendant for a general charge or a directed verdict in favor of defendant.
*966 Before any evidence was presented to the jury, there was a hearing before the court out of the presence of the jury on defendant's motion to suppress "any INCOURT IDENTIFICATIONS OF THE APPELLANT." It was claimed in the motion that any in-court identification of the appellant by either Ms. McCall or Mr. Sellers would have been tainted by a previous lineup identification at the Mobile Police Department the next day after the alleged robbery. On the hearing of said motion, defendant and a jail inmate testified on behalf of the movant, and Ms. McCall and Mr. Sellers testified as witnesses for the State. The testimony of the witnesses for the State was in direct conflict with the testimony of the witnesses for the defendant on the motion to suppress as to any suggestiveness on the part of anyone conducting the lineup that would tend to taint the testimony of the witnesses for the State as to the alleged robbery. For instance, the witnesses for the defendant on the hearing of the motion to suppress testified that some police officer told one of the witnesses for the State to look at No. 5 carefully. This was denied by both of the witnesses for the State. Furthermore, both of the witnesses for the State testified, not only on the motion to suppress but also in their testimony before the jury, positively and unreservedly that they were basing their identification testimony exclusively upon their observance of the man at the cash register who took the money from the cash register and fled from the store on the day before the lineup was conducted. The trial court was not in error in overruling defendant's motion to suppress.
The only witness who testified on behalf of defendant in the presence of the jury was Mr. James Henderson, whose testimony tended to support an alibi on behalf of defendant. He testified he was usually with defendant every day during the first part of May 1983 and that he had learned on the day after defendant's arrest that he had been arrested for the robbery. He stated positively that on the day before he obtained said information he and the defendant were "riding looking for work, you know. We was riding all over town looking for work, going places," and that this was "During the day." On cross-examination of the witness, the State's attorney promptly showed that the witness had been convicted of a robbery and was serving time therefor in Holman Prison. The attorney made inquiry of him, "where did you get to know that man?", evidently referring to the defendant. Defendant's counsel promptly asked for a "bench conference." At the bench conference out of the hearing and presence of the jury, defendant's counsel moved for a mistrial. During approximately four pages of the transcript, a colloquy ensued among the trial judge and attorneys for the respective parties, which was concluded as follows:
"MR. ORSO [Defendant's attorney]: I think it would not cure it. I think the damage has already been done, so, I
"THE COURT: What?
"MR. ORSO: I think it would not cure the damage already done. I withdraw my request for you to instruct the jury. I think the damage is already done. It would not cure what has happened. It would probably make it worse, like you are saying. So, I will withdraw
"THE COURT: You withdraw.
"MR. ORSO: I withdraw my request to have you instruct the jury to disregard
"THE COURT: Well, that's what I thought you ought to do. Okay.
"(Jury present:)
"All right. Go ahead."
We agree with appellant's attorney that probably by the cross-examination of the witness, the jury was led to believe the defendant had previously been in prison in Holman Prison, but we do not agree with appellant's counsel in his contention that the trial court should have granted a mistrial for what the State's attorney was apparently endeavoring to show. The trial court did not commit reversible error in denying any motion or request by defendant for a mistrial.
The Alabama authorities cited by appellant as to the issue under consideration are *967 in general inapposite, particularly Garner v. State, 269 Ala. 531, 114 So.2d 385 (1959), in which no motion or request for a mistrial was considered, and Code of Alabama 1975, § 15-17-5, which pertains exclusively to "Grounds for granting new trials" and "costs thereof." There was no motion for a new trial in the instant case.
The next issue presented by appellant is based on the denial by the trial court of the request of defendant's counsel that he be allowed to reopen the case and present the testimony of Officer Walter Pickett, who had apparently been present at the trial of the case but was not in the courthouse at the time of the request of defendant's attorney that he be allowed to reopen the case. State's counsel said he "had no objections to defendant's counsel being allowed to reopen the case and present the testimony of Officer Pickett." At this point in the proceeding, the bailiff of the court stated that Officer Pickett had gone. The trial judge then stated, "See if you see him down the hall and tell him to come back here." The attorney for defendant then asked, "May I call to see if he is over in headquarters?" The colloquy among the trial judge and the attorneys on the subject ended as follows:
"THE COURT: Let the record show that the Court denied the defendant's request to reopen the case and put on a man that's not here.
"MR. ORSO: Judge, the man was here and he is probably at CID and I would like to call and get him here. I would still like to open the case or wait until we see if he is at CID across the street from this courthouse.
"THE COURT: Let the record show that I denied it."
Code of Alabama 1975, § 15-14-4, cited by appellant and all cases cited by appellant as to this issue are to the effect that the allowance by the court of "a party to supply an omission in the testimony ... at any time before the conclusion of the argument" is within the discretion of the trial court. There was no abuse of such discretion, and appellant's contention as to this issue is without merit.
In another of the issues set forth in the brief of counsel for appellant, he insists that the judgment of the trial court should be reversed for the trial court's failure to charge the jury that identification testimony is opinion evidence. He cites in support of his contention United States v. Telfaire, 469 F.2d 552 (D.C.Cir.1972), in which the Court rejected appellant's contention that the trial court should be reversed for its failure "to initiate a special instruction on identification even in the absence of request by defense counsel," but in an appendix to the opinion at 469 F.2d 558 promulgated for future use "Model Special Instructions on Identification." Appellant concedes that defendant did not make any written request for a charge on identification testimony and made no objection and took no exception to any of the court's oral charge to the jury. He concludes his argument on the issue by stating, "Therefore, the failure of the trial court to give a charge on identification testimony was reversible error." It has been repeatedly and uniformly held by the appellate courts of Alabama that the failure of the trial court to instruct the jury as to a particular feature of the evidence in the case does not constitute reversible error in the absence of any written request by the defendant for such instruction. As stated in Coots v. State, Ala.Cr.App., 434 So.2d 864, 868 (1983):
"The appellant's remedy was to request or tender a written charge covering any subject not fully covered under the oral charge. Since the appellant failed to do this, the issue asserted is not properly preserved for review. Hollis v. State, 399 So.2d 935 (Ala.Cr.App.1981)."
By his only other issue presented on appeal, appellant contends the trial court erroneously sentenced him to life imprisonment pursuant to the Habitual Felony Offender Act, now codified in part as Alabama Criminal Code, § 13A-5-9, which provides in part:

*968 "(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:
"(1) On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years;"
Robbery in the third degree is classified as a Class C felony. § 13A-8-43. The issue now under consideration is grounded by appellant on various grounds, one of which is that § 13A-5-9 "is unconstitutional and in violation of the due process and equal protection clauses of the Constitution." The particular contention has been soundly rejected by the appellate courts of Alabama. As stated in Weaver v. State, Ala. Cr.App., 437 So.2d 626, 627 (1983):
"The last issue appellant raises on appeal is whether or not Alabama's habitual offenders statute is violative of the Constitutional provisions for due process and equal protection. The constitutionality of the recidivist statute has been affirmed by this court on numerous occasions and we do so again now. Watson v. State, 392 So.2d 1274, writ denied, Ex parte Watson, 392 So.2d 1280; Murphy v. State, 399 So.2d 340, cert. denied, Ex parte Murphy, 399 So.2d 347."
Appellant further contends that the "statute also allows consideration of felony convictions incurred prior to its enactment." This contention was expressly held untenable as a basis for a challenge of the Habitual Felony Offender Act in Watson v. State, supra. Furthermore, appellant contends the defendant was not given adequate notice "ahead of time with regard to the felony convictions which the State intends to rely upon at the sentence hearing." In our opinion, appellant does not show with reasonable certainty that he is correct as to this specific contention. Nevertheless, there is some confusion on the subject, which is demonstrated by the following part of the transcript at the commencement of the sentence hearing:
"THE COURT: How many felony convictions does he have on his record at this time?
"MR. McGREGOR: Your Honor, the Louisiana records are a little bit difficult to read, but Mr. Orso and I agree that he does have a total of four prior felony convictions; and we have entered as a State's exhibit in the Court records both the motion for habitual offender status and the original certified copies.
"MR. ORSO: Judge, he says that I agree, now. I can't make any sense out of this. Can I talk to my client just a minute and see what he says about thatsee how many priors he may have?
"(Discussion at counsel table, off record.)
"MR. McGREGOR: Judge, if you did not get the pre-sentence reportapparently, it was just filed in our office, and I would ask that this be marked as a Court's exhibit and entered as a pre-sentence investigationexcuse me. That's on Brooks; that's not Wright.
"MR. ORSO: Judge, we are not stipulating that he has any priors. I think it's incumbent upon the D.A. to prove any priors (inaudible).
"THE COURT: Well, you don't have to stipulate it. He's got the things introduced in the record.
"MR. McGREGOR: There areI'll show you that.
"THE COURT: Now, what's the recommendation?
"MR. McGREGOR: The recommendation, Your Honor, is that he be sentenced to life imprisonment.
"THE COURT: Without parole?
"MR. McGREGOR: No, sir. I believe this was a
"MR. ORSO: Robbery third.
"MR. McGREGOR: Robbery third degree; Fifteen to life. You can sentence him to life. And we would ask that you sentence him to the maximum, based on his prior convictions."
The colloquy continued among the trial judge, the attorneys, and the defendant for three or four pages of the transcript, which was concluded by the court's pronouncing *969 the sentence of the defendant to imprisonment for life.
Included in the transcript are a number of what purport to be copies certified according to the law of Congress of convictions by the Criminal District Court for the Parish of Orleans, but in some way a large part of the reported copies of said records has become illegible to such an extent that we are unable to determine therefrom whether this appellant has been validly convicted of three or more felonies prior to his conviction in the case now on appeal. For this reason, the case should be remanded to the trial court with directions that another sentence hearing be conducted and sentence be pronounced by the court in accordance with the evidence presented at said sentence hearing. The trial court will make due return to the order of remandment with notice to the parties. Either party aggrieved thereby will have fourteen days within which to file a brief, and the opposing party will have fourteen days thereafter within which to file a reply brief.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
The transcript of the proceedings in the trial court on the return to the order of remandment discloses that at the second sentencing hearing, the State was unable to convince the trial judge that defendant while represented by counsel had been previously convicted of more than one felony. The trial court then sentenced defendant to imprisonment for twenty years, which is the maximum permissible sentence, as provided by Alabama Criminal Code, § 13A-5-6(a)(2) when considered together with § 13A-5-9(a)(1), thereby decreasing the sentence from imprisonment for life as shown by the record prior to our remandment of the case for another sentencing hearing.
Neither party has manifested any grievance by the filing of a brief, and the fourteen days for filing such briefs have expired.
The judgment of conviction and sentence should now be affirmed.
OPINION EXTENDED; AFFIRMED.
All the Judges concur.

ON APPLICATION FOR REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
Although we stated in our opinion on return to remand that neither party had "manifested any grievance by the filing of a brief, and the fourteen days for filing such briefs have expired," it now appears to the writer that on the last day of said fourteen-day period, appellant filed an application for rehearing accompanied by a brief in which he challenges the correctness of the affirmance of the judgment of conviction in the instant case. Whether appellant's attorney is justified in his assumption that the time required for the filing of an application for rehearing did not commence to run until after the opinion on return to remand, we do not pass upon at this time, but we are convinced that appellant's attorney was and is sincere in making the assumption. Therefore, we proceed to determine the application for rehearing and consider the brief of counsel in support thereof.
In the brief of counsel for appellant in support of his application for rehearing, is the following "STATEMENT OF THE FACTS":
"The Appellant submits that the facts set forth in the Court's decision dated February 12, 1985, as well as the Court's opinion extended on 22nd day of October, 1985, are correct."
Appellant's attorney proceeds therefrom to present two issues, which we now consider *970 in the order presented in brief of counsel for appellant.
As to the first issue, appellant's attorney argues:
"It is the Appellant's position that there was no evidence adduced at trial as to who might have pushed Ms. McCall. Further, it is the Appellant's position that there was no evidence adduced at trial that any force was used against the person of Shirley Jean McCall, nor was there any evidence that she offered any physical resistance. It affirmatively appears from the transcript that she did not even know what was going on or realize what was happening until later. Further, the Appellant contends that the term `force' would require more than an unlawful touching which was apparently the case here."
We disagree with appellant's attorney as to each of the four sentences contained in the foregoing quotation from his brief, as shown by the nearly three-page quotation in our opinion on original submission of some of the testimony of Ms. McCall during the trial of the case. In her testimony she identified defendant as the person who had pushed her while he was taking money from the cash register, knocked her off balance in doing so, caused her to scream for assistance from Mr. Sellers, and by the conduct of defendant she was knocked over "just over the counter" and "had to brace" herself with her hands. If we did not say enough in the opinion on original submission to assure appellant's attorney that we believe he is incorrect in the assertions found in his brief as to the first issue presented on application for rehearing, we state now that we think he is incorrect as to every assertion in his brief as to his first issue, except as to the second clause of the second sentence of the paragraph stated above, in which he said, "nor was there any evidence that she offered any physical resistance." Furthermore, if we did not make it clear enough to counsel for appellant that we were of the opinion that the trial court did not commit reversible error in denying defendant's motion for a judgment of acquittal on any ground now urged by counsel for appellant, we do so now by stating that the trial court was correct in denying appellant's motion for a judgment of acquittal.
By the second issue presented in brief of counsel for appellant in support of his application for rehearing, he takes the position, as he did in his brief on original submission of his appeal, that the trial court was in error in denying defendant's motion for a mistrial. We are of the opinion that we adequately considered substantially the same issue presented by appellant in our opinion on original submission. Therein we discussed some of the authorities cited in appellant's brief as to the issue, particularly Garner v. State, 269 Ala. 531, 114 So.2d 385 (1959), which we stated is inapposite. There is nothing in appellant's brief on application for rehearing that causes us to come to a different conclusion from that which we have expressed as to this appeal.
The application for rehearing should be overruled.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.