Kenneth Marvin Jones and John Marshall Gordon were charged in separate indictments with the murder of Audrey Martinez. Anthony Lee Talton was charged in a two-count indictment with the attempted murder and first degree assault of Martinez. All of the charges against the three defendants arose out of the same incident and, on motion of the State, the cases were consolidated for trial. A jury convicted Jones and Gordon of murder and convicted Talton of attempted murder. Jones was sentenced to 25 years' imprisonment and was ordered to pay $6,000 in restitution to the family of the victim. Gordon was sentenced to imprisonment for life and was also ordered to pay $6,000 in restitution. Talton was sentenced to 20 years' imprisonment. In this consolidated appeal, Jones raises two issues and Gordon and Talton each raise one issue.
The State's evidence tended to show that, late on the afternoon of May 18, 1990, appellant Gordon, a 15-year-old,[1] was involved in a fist-fight with Syrone Martinez, the 14-year-old nephew of the deceased. This fight took place in the presence of appellant Jones, the uncle of appellant Gordon. Jones, who had been injured in an automobile accident and required a cane to assist him in walking, interceded in this fight by striking Syrone Martinez with his cane.
Around 7:30 that same evening, appellant Talton was at the checkout counter in Zoghby's Grocery and Market purchasing some items. David Franklin, a store employee, was waiting on Talton. Also in the store were Kaleel Zoghby, the store owner, Doug Williams, the assistant manager of the store, and appellant Jones, who had *Page 571 
come into the store with Talton and who was waiting near the entrance while Talton made his purchases. Audrey Martinez, the deceased, then entered the store and began arguing with appellant Jones. Store owner Zoghby testified that Martinez pushed Jones down an aisle, and then Jones turned and fired a gun at Martinez. Store employee Franklin testified that Jones told Martinez to "back off" two or three times "[a]nd then he backed up trying to get away from [the deceased] looked like to me. Then [Jones] pulled a gun and he fired." According to Franklin, Martinez was five or six feet away from Jones when Jones fired. After Jones fired his gun, Martinez said, "Oh, this mother fucker shot me," then "jumped" Jones. The two fell to the floor in one of the aisles of the store and began wrestling.
Store employee Franklin and assistant manager Williams both testified that, while Jones and Martinez were fighting on the floor, appellant Gordon came into the store, fired a gun two or three times, then fled. Jones then managed to get away from Martinez briefly, but made it only to the next aisle before Martinez tackled him again. Franklin and Williams observed appellant Talton moving toward Jones and Martinez with a butcher knife in his hand. As the police were arriving,[2]
appellant Talton helped appellant Jones out of the store.
None of the store personnel saw appellant Talton use the knife he had in his hand. Nor did any of the three see Martinez with a weapon of any type. However, Syrone Martinez testified that he was also in the store during this altercation and that he saw "that man over there" stab his uncle, the deceased. On cross-examination, he acknowledged that he had not reported this information in his statement given to Prichard police officers a day or two after this incident. Syrone Martinez also acknowledged that he had said in this statement that Audrey Martinez had a knife, " '[b]ut he never got to use it because he fell. But the man was standing there. And he might have picked it up when I ran and got help.' "
Audrey Martinez was transported to a local hospital, where he died in surgery. Dr. LeRoy Riddick, the pathologist, testified that the deceased had three gunshot wounds and two stab wounds. One of the gunshots entered the deceased's abdomen, hit several organs, and nearly severed the deceased's aorta. The deceased was also shot in the flank and shoulder. A bullet, later identified as a .32 caliber, was removed from the shoulder wound. No other bullets were found in the body. The deceased had a knife wound on the right shoulder and defensive-type knife wounds on one of his hands.
Dr. Riddick acknowledged on cross-examination by Jones's defense counsel that the wound from the .32 caliber bullet would not, alone, have been life threatening, while the gunshot which hit the aorta "in and of itself would [have been] fatal." He also acknowledged on cross-examination by Talton's attorney that the stab wounds, alone, would not have been life threatening. However, Dr. Riddick made it very clear that the cause of death was
 "multiple gunshot wounds to the chest, abdomen, and flank, and sharp force injuries to the back and to the hand. I put them all in there. And the reason I put them all in there is if you're bleeding, essentially what you do when you get a wound, a gunshot wound or anything and you're bleeding, every drop of blood you lose is going to somehow affect you adversely and going to contribute to your death. So, I put them all in there."
Dr. Riddick later reiterated, "[A]ll of them [the wounds]contributed to his death." (Emphasis added.)
A .32 caliber blue steel handgun was found in the aisle in which appellant Jones and the deceased had first fought. Appellant Jones's cane and two lead projectiles were also found on the floor of the store. Neither the .32 caliber handgun nor the lead projectiles, identified at trial as .38s, *Page 572 
were submitted for expert testing. A Colt .38 caliber revolver, three spent cartridges, and a butcher knife were later recovered from 180 Sanders Circle, the residence of appellants Jones and Gordon. Expert testing confirmed that the three spent cartridges had been fired from the Colt .38.
Appellant Jones admitted shooting the deceased with his .32 caliber handgun, but asserted that he had acted in self-defense and meant only to wound the deceased, not kill him. He testified that the deceased was armed with a small dagger-type knife with which the deceased had stabbed him in the shoulder. Jones also testified that he had picked up this knife after the fight and had maintained it in his possession until the trial. This knife was introduced at trial. Appellant Gordon testified and admitted shooting the deceased with the Colt .38, but maintained that he had acted in defense of Jones, his uncle. Appellant Talton did not testify at trial. His defense appears to have been noninvolvement in the altercation.
 I
Appellant Jones contends that the evidence is insufficient to support his conviction, because the wound which he admittedly inflicted was not, in and of itself, life threatening. He argues that Gordon inflicted the fatal wound, the gunshot which hit the deceased's aorta.
As in Holsemback v. State, 443 So.2d 1371, 1381 (Ala.Cr.App. 1983), this argument is "without factual or legal support." In that case, two brothers, Phillip and Daniel Holsemback, were convicted of murder. Both brothers were at a bar, but were seated at different tables. Daniel and the victim had a fight, from which Daniel emerged with blood on his shirt. He put a knife in his pocket and fled the scene. 443 So.2d at 1373. Phillip came from another part of the club, jumped on the victim, who was laying on the floor, and began hitting him. When Phillip was arrested a short time later, he "had blood 'all over him' " and two knives on his person. The victim died from multiple stab wounds. Id.
On appeal, Daniel argued that he could not be convicted of the murder because Phillip inflicted the fatal wound.Id. at 1381. We held that "Daniel and Phillip could both be properly convicted of [the victim's] murder, even though they acted independently, if each inflicted an injury that caused, contributed to, or accelerated [the victim's] death." Id. at 1382.
 "To render a defendant guilty, it is not necessary that the blow given by him, or his wrongful act, was the sole cause of death. Even if the blow or act was only a partial cause accelerating death, the defendant is nevertheless guilty."
Id. See also Stokley v. State, 254 Ala. 534, 540, 49 So.2d 284,289 (1950); Henderson v. State, 11 Ala. App. 37, 42, 65 So. 721,723 (1913); R. Perkins R. Boyce, Criminal Law 53 (3d ed. 1982).
 "The test as to the guilt of the person inflicting the first wound in such case is whether, when death occurred, the first wound contributed to the event. If it did, although other independent causes also contributed, the causal relation between the unlawful acts of the accused and the death are made out. If the life current went out from both wounds, so that at the very instant of death the first wound was contributing to the event, the one who inflicted it is criminally responsible."
Pitts v. State, 53 Okla. Cr. 165, 168, 8 P.2d 78, 79 (1932).
In this case, the toxicologist clearly stated thatall of the wounds, including the one inflicted by appellant Jones, contributed to the death of the deceased. Therefore, Jones could properly be convicted of the murder of the deceased.
 II
Appellant Jones also argues that the trial court erred in consolidating his case for trial with that of appellants Gordon and Talton. However, the only appellant on behalf of whom an objection was raised at the hearing on the State's motion to consolidate was Talton. By failing to object to the consolidation prior to trial, Jones has waived this issue.Ewing v. *Page 573 United States, 386 F.2d 10, 13-14 (9th Cir. 1967), cert. denied, 390 U.S. 991, 88 S.Ct. 1192, 19 L.Ed.2d 1299 (1968) (where defendant's case was consolidated with that of co-defendant under Rule 13, Fed.R.Cr.P., which is similar to Rule 15.4(b), A.R.Cr.P.Temp. (now Rule 13.3(c), A.R.Cr.P.), and defendant did not object prior to trial, objection was waived).
 III
Appellant Gordon asserts that the trial court improperly refused two of his written requested charges. However, this issue was not properly preserved for our review. After Gordon's defense counsel specifically objected to one aspect of the court's oral charge as given, which was only peripherally related to the two requested charges at issue here, the following occurred:
 "[Gordon's defense counsel]: And just note my exception to the failure to give my requested charges which are correct statements of the law.
"The Court: And not covered in the oral charge?
 "[Gordon's defense counsel]: And not covered in the depth that I wanted in the oral charge, yes, sir."
Under Rule 14, A.R.Cr.P.Temp. (now Rule 21.2, A.R.Cr.P.), to preserve alleged error in the refusal of requested charges, a defendant must not only object in a timely manner, he must "state with particularity the grounds of [his] objection."Matkins v. State, 497 So.2d 201, 203 (Ala. 1986) (emphasis omitted). An objection which merely asserts that refused charges are correct or accurate statements of law does not meet this requirement. Connolly v. State, 539 So.2d 436, 438
(Ala.Cr.App. 1988); Bogan v. State, 529 So.2d 1029, 1031
(Ala.Cr.App. 1988). Cf. Ex parte Washington, 448 So.2d 404, 406
(Ala. 1984) (in order to preserve alleged error in the trial court's oral charge, an "objection must be specific enough to point out the alleged error so as to allow the judge to correct [that] error"); Petite v. State, 520 So.2d 207, 213
(Ala.Cr.App. 1987) (same). This is especially true in cases, such as the present, where the defendant submits a large number of requested charges and most or all of them are refused.[3] SeeConnolly v. State, 539 So.2d at 438.
 IV
Appellant Talton contends that the evidence is insufficient to support his conviction for attempted murder. His argument appears to be three-fold: 1) that he was not identified as the person who allegedly stabbed the deceased; 2) that there was no evidence of his intent to kill the deceased; and 3) that the stab wounds were not life threatening.
 A
Syrone Martinez, the nephew of the deceased, testified that he saw "that man over there pull a knife," which he described as a butcher knife, and stab the deceased "a few times." The trial judge asked, "What man did you see stab him?" to which Syrone replied, "The one sitting at the end with his hand like that (indicating)." We are somewhat puzzled by the prosecutor's failure to specify for the record what person Syrone was identifying as the person who stabbed the deceased. CompareWright v. State, 487 So.2d 962, 964 (Ala.Cr.App. 1985) (after victim identified person "sitting right there" as perpetrator, prosecutor stated, " 'Let the record reflect, please, that the defendant has been identified' "). However, Syrone had previously testified that he knew appellants Jones and Gordon by name and store employees Franklin and Williams had previously testified that they saw Talton, whom they knew by name, approaching Jones and the deceased with a butcher knife in his hand. In view of the circumstances of this case, we are of the opinion that the evidence was sufficient to present a jury question as to the identity of that person. See *Page 574 Butler v. State, 439 So.2d 210, 211 (Ala.Cr.App. 1983).
 B
It is clear that "[a]ttempted murder is a specific intent crime" which requires the State to "prove that the accused acted with the intention of taking the life of another."Paige v. State, 494 So.2d 795, 796 (Ala.Cr.App. 1986). See Ala. Code 1975, §§ 13A-4-2(a) and 13A-6-2(a)(1). However, "the element of intent, being a state of mind or mental purpose, is usually incapable of direct proof, [and] it may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances." Johnson v. State,390 So.2d 1160, 1167 (Ala.Cr.App.), cert. denied, 390 So.2d 1168 (Ala. 1980). Accord, Fears v. State, 451 So.2d 385, 387 (Ala.Cr.App. 1984); Young v. State, 428 So.2d 155, 158 (Ala.Cr.App. 1982).
Here, appellant Talton was armed with a butcher knife, which is clearly a "deadly weapon" under § 13A-1-2(11). After "pulling" this knife, he moved from the front of the store to the area where Jones and the deceased were on the floor fighting. It can be inferred from Syrone's testimony that he then stabbed the deceased. Under these facts, the question of intent was for the jury to determine. See Greer v. State,475 So.2d 885, 889 (Ala.Cr.App. 1985); Swann v. State,412 So.2d 1253, 1259 (Ala.Cr.App. 1982).
 C
The third argument advanced by Talton was answered in Part I above. The fact that the knife wounds alone would not have caused the deceased's death is immaterial. Dr. Riddick stated that all of the wounds, including the knife wounds, contributed to the deceased's death.
For the reasons stated above, the judgments of the circuit court are affirmed.
AFFIRMED.
All Judges concur.
[1] The record before this Court does not contain the certification proceedings involving appellant Gordon and no issue relating to the certification has been raised in this appeal.
[2] After Jones fired at the deceased, store owner Zoghby ducked behind a counter and called the police and the paramedics.
[3] Appellant Gordon submitted some 30 requested charges, all of which appear to have been refused.