The indictment charged Jerry Louis Tucker, alias Kenneth Shaw, with the unlawful assault with intent to murder one Lonnie Williams. The jury found the appellant "guilty as charged," and the trial court set sentence at eight years imprisonment. The appellant filed a motion for a new trial, challenging the weight and sufficiency of the evidence, which was duly overruled following a hearing. This appeal follows.
Adam D. Hays, a police officer with the City of Birmingham, testified that he responded to a call to investigate a shooting at 592 Forty-first Street, North, in the City of Birmingham, at about 7:30 on the evening of June 20, 1978. Upon his arrival, *Page 581 
Officer Hays found that one Lonnie Williams had four gunshot wounds in his legs, that a tourniquet had been applied to his right leg, that he asked about calling an ambulance and was advised that Williams' relatives would take him to the hospital.
John Collins testified that he worked with Jerome Beaman and Lonnie Williams for McWane Pipe Company in Birmingham. Collins stated that he and Beaman went to the home of Ida Mae Williams, the mother of Lonnie Williams, about 7:00 on the evening of Friday June 20, 1978. He stated that they had been there just a short time when they saw a black male approaching with a rifle in hand, walking into the back yard of Williams' home. Collins stated that he was seated on a glider with Lonnie Williams at that time and heard the male approach Williams, stating that, "I told you I was going get you," and that Williams did not reply. The party with the rifle then spoke a second time and began firing. Collins stated that he ran for cover and then heard the weapon fire six or seven times. When he returned he saw that Lonnie Williams had been shot three or four times and appeared to have a wound in his right thigh, another in his knee, and a third near the ankle, and a fourth wound in his left leg. He stated that he and Beaman took a belt and put it around the right leg, making a tourniquet in an effort to stop the bleeding. He stated that Birmingham police officers came a short time later, and soon thereafter Williams was taken to a local hospital.
On cross-examination, Collins stated that he heard the party with the rifle say, "I told you I was coming back," and, secondly, "You don't believe I will shoot you." He stated that thereafter the shots commenced. He stated that bullets were zooming over his head as he ran for cover. Collins stated that he and Jerome Beamon had come to the Williams' home after work on the evening in question.
Jerome Beaman testified that he, John Collins and Lonnie Williams were employed at McWane Pipe Company in Birmingham, but worked in different departments. Beaman stated that he was a brother of Lonnie Williams, and that, after getting off work, he and John Collins went over to his mother's home on Friday, June 20, 1978. He stated that Lonnie Williams lived there with their mother and shortly after they arrived at her home, which was about 7:00 that evening, they went into the backyard and built a fire in the barbeque pit to cook. He stated that fifteen to twenty minutes later the appellant, Jerry Tucker, appeared in the backyard with what appeared to be a .22 rifle and pointed it at his brother, Lonnie Williams, then stated, "I could kill you right now." He stated that Jerry Tucker kept talking and then repeated, "I could kill you right now," then commenced firing at Lonnie Williams. He stated that a number of these shots hit the barbeque pit, that he ran for cover, and saw that his mother, Ida Mae Williams, was attempting to come out the back door about this time. He stated that he crawled into the house and heard five or six shots. When the shooting stopped, Beaman went outside. He saw Lonnie Williams lying on the ground and he appeared to have been shot in the right hip and both legs. He stated that John Collins put a belt around Lonnie Williams' leg to stop the bleeding, that they put Lonnie in his automobile and he drove him to Carraway Methodist Hospital where Lonnie remained about ten days.
On cross-examination, Beaman stated that John Collins was seated on the glider in the backyard when Jerry Tucker approached with a rifle in hand, that he first threatened Williams, then began to shoot at him. He stated that Williams was unarmed at the time.
Lonnie Williams testified that he worked with John Collins and Jerome Beaman, his brother, for McWane Pipe Company in Birmingham. Lonnie Williams stated that he lived at home with his mother at 592 Forty-first Street, North, in Birmingham, Alabama, on Friday, June 20, 1978. Shortly after 3:00 on the afternoon of June 20, 1978, one of his nieces came inside the house and called to him, stating that someone was picking on his nephew a few doors down the *Page 582 
street. Lonnie Williams stated that he walked down the street and saw the appellant, Jerry Tucker, "about five doors away." He stated that his nephew was there and they were arguing. Williams stated that he asked Tucker why he was "jumping on his nephew," and that Tucker "drawed a little old knife." He stated that he kicked the knife out of Tucker's hand and they began to tussle. He stated that a few minutes later Tucker's older brother, Ernest, grabbed him from behind and some others grabbed Jerry Tucker, separating them. Later that afternoon, Ernest Tucker came over to his home to talk with him and his nephew, Maurice, that they shook hands, talked with his mother, and said they were friends. This was around 5:00. Shortly after 7:00, John Collins and his brother, Jerome Beaman, came over and they started to build a fire in the barbeque pit. Lonnie Williams stated that he was seated in a glider with John Collins when Jerry Tucker walked up with a .22 rifle in hand. He stated that Tucker "aimed the rifle at him and said, "Hey, m___ f___, you think you bad don't you." Williams stated that he replied, "I ain't said no." Then Tucker said, "You'll answer this," and started shooting. He stated that the first shot struck him in the right hip, and he was hit four more times, once in the right thigh, another in the right knee, and a third in the right leg. A fourth shot struck him near his left knee, damaging a nerve. Williams stated that he fell to the ground and Jerry Tucker ran away. He stated that John Collins and his brother, Jerome Beaman, came up and put a belt around his right leg to stop the bleeding. Williams indicated that his brother, Jerome Beaman, drove him to the Carraway Methodist Hospital for treatment. Williams stated on cross-examination that he was unarmed, that he had not really had a fight earlier that afternoon with the appellant, but they had argued, and that he had no criminal record.
Mrs. Ida Mae Williams testified that her son, Lonnie Williams, lived with her at 592 Forty-first Street, North, in Birmingham, Alabama. She stated that, on June 20, 1978, she heard her niece call through the front door, shortly after 3:00 in the afternoon that "someone was bothering Maurice," whom they referred to as "Baba." As she was talking on the telephone, Lonnie left the house. A few minutes later she looked out and saw that some people were keeping Jerry in a house and that Lonnie brought Maurice home.
She stated that later that afternoon Jerry Tucker's oldest brother, Ernest, came over and talked with her and with Lonnie, and they shook hands and left as friends. She stated that later that evening, about 7:00 or 7:15, John Collins and her son, Stanley Williams, who is also known as Jerome Beaman, came over and were sitting on the back porch near the barbeque pit. She stated that she was inside the house but looked out and saw John Collins sitting in the glider with her son, Lonnie. In a few minutes she heard some voices and looked out, then heard some "ping, ping, ping sounds hitting the barbeque pit." She stated that Jerome Beaman crawled through the back door and when the shooting stopped they went outside and saw Lonnie Williams lying on the ground. She stated that neither Lonnie, John Collins, nor Jerome Beaman had any kind of weapon, that they were unarmed when Jerry Tucker shot her son, Lonnie Williams. Mrs. Williams stated that Jerry Tucker had a .22 rifle in his hand when he came up and began shooting.
Birmingham Police Sergeant Selman Morgan Knight testified that he was assigned to investigate a shooting incident which occurred on June 20, 1978, at the home of Mrs. Williams on Forty-first Street, North, in Birmingham, Alabama. He stated that he began looking for the appellant, Jerry Louis Tucker, and talked with several of his relatives. Approximately ten days later, he received a telephone call and found Tucker at the home of his girl friend at 114 Village Court where he arrested him for the assault on Lonnie Williams.
The appellant made a motion for a directed verdict and for the reduction of the charge, and also made a motion to exclude. These motions were overruled. *Page 583 
Lonnie Williams was recalled to the stand and testified that he did not ask Jerome Beaman to come over to help him that evening. He indicated that Jerry Tucker was a few feet away when he fired the rifle at him.
Anthony Dawson testified he lived at 588 Forty-first Street, North, in Birmingham and was employed at the Airport Motel. Anthony Dawson stated that, shortly after 3:00 on the afternoon of June 20, 1978, he was seated on his back porch with his little brother Jerry, a little cousin, and a friend in the neighborhood. He stated that he saw Jerry start playing with his little brother, his cousin, and the neighbor, Maurice, who were three fifteen year old boys. He stated that, in a few minutes, he saw Maurice run into the house and return with a kitchen knife in his hand. In a few minutes he saw Maurice's uncle, Joe Lonnie Williams, come down the street. He stated that Jerry Tucker was cut with a knife and that it was Maurice who had the knife, that it was a kitchen knife with a five to six inch blade. He stated that Jerry was trying to get to the one who struck him with the knife, and several people grabbed Jerry and Joe Lonnie, separating them. He stated that Jerry came in his house and Joe Lonnie Williams and his nephew, Maurice, went back to their house. He stated that Jerry Tucker had a deep cut in the center of his chest after the "tussle" and was bleeding. He stated he was not present later in the day when the shooting took place. He stated that he and his uncle, Michael Dawson, were the ones who, along with Ernest Tucker, broke up the fight.
On cross-examination Anthony Dawson testified that his brother's name was Eric, that his cousin's name was Arthur, and they were fifteen year old boys who frequently played with Maurice Williams. He stated that Jerry Tucker, the appellant, was about twenty years of age, and that he did not actually know who cut Jerry that afternoon, but he had talked with some policemen, then later with Jerry Tucker's lawyers about what happened.
Arthur De Witt Dawson stated he was fifteen years old and attended Hayes High School where he was in the tenth grade. He stated that, together with Eric Dawson and Maurice Williams, he was sitting on the back porch of the home where Anthony Dawson lived. He said that Jerry Tucker came over and began playing with the three fifteen year old boys. He stated that the fight started because the three of them had picked some blackberries, that they were eating them when Jerry Tucker told them to throw them out. He said they began to play and Maurice ran home and came back with a knife. He said that by the time they got back that Anthony Dawson had broken up the boys and that Maurice looked like he was going to cut Jerry Tucker. He stated that later he saw Maurice cut Jerry with a knife, and a few minutes later Joe Lonnie Williams came up, and Jerry's older brother, and separated them. He said that Jerry Tucker was not armed, and that he went into the Dawson's house.
Arthur Dawson stated that he, Eric, and Maurice were all in the tenth grade in high school, and that "Jerry Tucker was bigger." He said that later he saw blood and a cut on Jerry Tucker's chest.
Eric Dawson testified he was in the tenth grade at Hayes High School and that he was the younger brother of Anthony Dawson. He stated that Arthur Dawson was his cousin, that Arthur was also fifteen years of age, and that on the afternoon of June 20, 1978, he, Arthur and Maurice Williams had picked a lot of blackberries. They had come back to the home of Anthony Dawson. He stated that Jerry Tucker came over and began playing with them and threw out some of the blackberries. Maurice Williams went home and came back with a butcher knife in his hand.
Eric Dawson stated that his brother, Anthony, pushed Maurice away from Jerry Tucker, and that Arthur was later talking with Joe Lonnie Williams. He said that suddenly Maurice cut Jerry Tucker with the knife. He stated that the cut was on his chest and that it bled. He also stated that a friend of Maurice's named Calvin Moore, *Page 584 
was involved. He said that later Anthony, Ernest Tucker, and Calvin Moore helped break up the "tussle," and that Maurice went home with Joe Lonnie Williams. Eric stated that he did not see the shooting later that night.
Arthur De Witt Dawson was recalled and testified that, on the afternoon in question, he had overheard Joe Lonnie Williams tell Jerry Tucker that, "I will shoot you first" during the time of the argument.
On cross-examination he stated that the only weapon he saw was the knife which Maurice had.
Jerry Tucker testified that he went to the home of Anthony Dawson shortly after 3:00 on the afternoon of June 20, 1978. He stated that he saw Arthur Dawson, Eric Dawson, and Maurice Williams, that they had been playing together, and that they had picked some blackberries and eaten most of them. He stated that he and Anthony Dawson told the boys, "Ain't no sense in eating yourself sick," and then got the bowl and threw out the blackberries because the boys had not washed them. He stated that he was just playing and joking with them and that Maurice went in the house and came back with a kitchen butcher knife. He stated that he was standing near the clothesline talking with Anthony when Maurice came back and cut him across the chest. He stated that Joe Lonnie Williams and another fellow walked up and asked him why he had jumped on his nephew, then picked up a bottle and struck him across the face. Jerry Tucker stated that he asked Joe Lonnie what he was going to do with the bottle, and that Joe Lonnie then hit him across the face. He stated that as he turned Maurice cut him. He stated that Anthony Dawson and the younger boys, and his brother, Ernest, came up and separated them. He said that he wanted to fight, and that his older brother helped separate them. He then went into the Dawson's house with Anthony. He stated that Joe Lonnie Williams left with Maurice, and a short time later he, Jerry, went for a ride in a car with a friend who let him have a rifle. He stated he was gone about thirty minutes in the car, and when he returned he took the rifle and walked over to where Lonnie Williams was seated near his back porch. He stated that as he walked up it looked to him as though Lonnie Williams was reaching for his pocket. He said to him, "Hold it. We can talk right there where you are at." Jerry said that he thought Lonnie Williams "was going to be a man and fight straight up," and he then fired at Lonnie. He stated that he fired only as Williams was rising up, and then fired again, trying to shoot him near his feet. He said that he did not intend to kill Lonnie Williams.
On cross-examination, Jerry Tucker stated that he received the rifle from his friend who took him for a ride in a car, and that it was just before dark when he got to Williams' home.
On cross-examination, Jerry Tucker admitted that he had lived in New York City for two years, but that he had not used the name of Kenny Shaw or Tommy Williams. He stated that he had not been drinking on the day of the argument and shooting.
At the conclusion of the oral charge, both sides announced, "Satisfied."
 I
The appellant first contends that the jury which tried the case was unlawfully impaneled as the appellant was required to use the "one for one" strike method in selecting the jurors for the trial of this cause. The appellant contends this is a violation of due process and equal protection of law.
This Court has several times passed upon the constitutionality of Section 714, Volume 14, Appendix, Code of Alabama 1940, as Recompiled 1958, and has determined that such statute does not violate either the due process or the equal protection clauses of the United States Constitution, nor does such offend the Constitution of the State of Alabama, 1901.Dixon v. State, 27 Ala. App. 64, 167 So. 340, cert. denied,232 Ala. 150, 167 So. 349 (1936); Mallory v. State, 55 Ala. App. 82,313 So.2d 203, cert. denied, 294 Ala. 765, 313 So.2d 208
(1975); Colston v. *Page 585 State, 57 Ala. App. 4, 325 So.2d 520, cert. denied, 295 Ala. 398, 325 So.2d 531 (1975); Liptroth v. State, Ala.Cr.App.,335 So.2d 683, cert. denied, 335 So.2d 688 (1976); Whisenhant v.State, Ala.Cr.App., 370 So.2d 1080, cert. denied,370 So.2d 1106 (1979); and Williams v. State, Ala.Cr.App., 377 So.2d 634, cert. denied, 377 So.2d 639 (1979).
This "one for one" strike method, applicable to Jefferson County, was not repealed by the adoption of the Code of Alabama, 1975. See § 1-1-10, Code of Alabama, 1975; andWilliams v. State, supra.
 II
The appellant contends that his motions for a directed verdict and motion to exclude the State's evidence, as well as his motion for a new trial, should have been granted by the trial court.
In Helton v. State, Ala.Cr.App., 372 So.2d 390 (1979), Judge Bowen stated the following:
 "To authorize a conviction for assault with intent to murder, the evidence must show an assault with intent to take life, under circumstances which would have constituted murder if death had resulted. Hamm v. State, 56 Ala. App. 632, 324 So.2d 345 (1975). An intent to take life is an essential element of the defense. Morgan v. State, 33 Ala. 413 (1859) . . . Both malice and intent to murder may be inferred from the character of the assault. Diamond v. State, 219 Ala. 674, 123 So. 55 (1929); Ray v. State, 147 Ala. 5, 41 So. 519 (1906)."
Also, the intent to take a human life may be shown by inference, via the character of the assault, the use of a deadly weapon, and the other attendant circumstances. Tolliverv. State, 50 Ala. App. 654, 282 So.2d 92 (1973); Roberts v.State, 49 Ala. App. 729, 275 So.2d 709 (1973); and Baldwin v.State, Ala.Cr.App., 342 So.2d 940 (1977).
Under the evidence presented at trial, the question of whether or not Williams was armed at the time the appellant, Jerry Tucker, approached him in the backyard of the Williams' home was a question for the jury under all of the attendant circumstances.
As to whether or not Tucker, the appellant, intended to kill Lonnie Williams likewise was a question for the jury under all the evidence presented at trial. We are unwilling to disturb this verdict as we believe the State presented a prima facie case thus, there was no error in denying appellant's motions. Authorities herein cited.
 III
The appellant contends that the district attorney was improperly allowed to cross-examine him in that he was asked on cross-examination whether or not he had ever used the name of Kenneth Shaw or Tommy Williams while he lived in New York City during 1977.
At the outset it should be noted that both of these aliases were averred in the indictment, therefore, the questions by the district attorney were proper. Moreover, the appellant answered each question in the negative, thus, no error is shown.
 IV
Finally, the appellant asserts that he should have been allowed to be sentenced under a plea bargaining arrangement which had been agreed upon prior to trial.
There is no evidence in this record to support this contention, thus, this Court may not consider matters dehors the record.
There being no testimony or other evidence with reference to this matter contained in the record, we cannot pass upon such issue. Carden v. State, Ala.Cr.App., 382 So.2d 1158, 1980. Cert. denied 382 So.2d 1162.
We have carefully examined this record and find no error therein. The judgment of the trial court is due to be and the same is hereby.
AFFIRMED.
All the Judges concur. *Page 586