Palmer Lee Fears, Jr. was charged with the murder of one Nancy Lee Morgan, by beating her with a chair, in violation of § 13A-6-2, Code of Alabama 1975 as amended. The jury found the appellant "guilty of murder as charged" and following a sentencing hearing, the trial court fixed punishment at 50 years' imprisonment.
Bessie Springer testified that she had been a neighbor for several years of one Nancy Morgan or Nancy Fears, as she was known, and lived approximately one block from her in Auburn, Alabama, on January 16-17, 1983. She stated that on January 16, 1983, she observed a fight between appellant and Nancy and that she saw the appellant strike Nancy with a brick, and that she was lying in the yard outside. She stated that the appellant struck Nancy on the forehead and that she could not move. Later, Bessie observed the appellant drag Nancy back into the house where she lived. The following day she went by and noticed that Nancy could not move and that she was "cold" and that she then called the police.
Grady Jones, an Auburn Policeman, stated that on January 17, 1983, he answered a telephone call from one Bessie Springer. He went to 543 White Street and found the body of a black female, lying on a bed in a bedroom. He stated that Officers Selman and Smith had arrived about the same time and that they entered the premises together. He stated that later Police Detective Kolander came and that they turned the body over to Detective Kolander. Auburn Police Detective Keith Kolander testified that he answered a call on the night of January 17, 1983, on White Street. He observed the body of a black female lying in a bed in the "second bedroom". He called the Coroner's office, had photographs made and determined the victim was one Nancy Morgan or Nancy Fears. He noticed cut or swollen marks above the eye and some bruises on the body of the *Page 387 
victim, a broken mirror and a broken chair lying on the floor.
Lee County Coroner Jon Williams testified that he observed the body of one Nancy Ruth Morgan or Nancy Fears at 543 White Street in Auburn on the evening of January 17, 1983. He checked her vital signs and pronounced her dead, then called the emergency ambulance service where Ricky Don Holt carried the body to the Department of Forensic Sciences where the same was received by Vann Pruitt, Jr., on January 18, 1983. Mr. Pruitt delivered the body that same day to Dr. Thomas Gilchrist in Montgomery for examination.
Dr. Thomas Gilchrist testified that he examined the body of Nancy Ruth Morgan, also known as Nancy Ruth Fears, on January 18, 1983. He noticed external and internal injuries to the body with a deep bruise of the head. There was a contusion on the breast bone and a number of abrasions on the back and buttocks. He stated that the body had four broken ribs. He noticed internal injuries to the pancreas and to the right kidney and that the right kidney "had died". He stated that the injury to the forehead above the left eye would be "consistent with being struck with a brick" and that the injury to the back and lower body would be consistent with being struck with some blunt force or "blunt object such as a chair". (R. 110). Dr. Gilchrist stated that in his opinion these blunt injuries to the abdomen and back were the cause of death.
The appellant was arrested on January 18, 1983 by Auburn Detective Kolander. He was taken to Police Headquarters and there given a Miranda warning. The appellant executed a Miranda
waiver indicating that he did not desire counsel. Detective Kolander testified that there were no threats, coercion, intimidation or hopes of reward offered in order to obtain a statement. Appellant also gave a similar statement after being likewise warned a week later on January 25, 1983. He again executed a Miranda type waiver. In both of these statements (R. 89 and R. 93), the appellant admitted striking the victim with a wooden chair and that he hit her more than once across the back. He stated that he picked her up and put her in the bed and had gone over to his father's house to cut some wood. He further indicated that Bessie Springer had come over and found the victim and called the police. He admitted being arrested and interrogated twice.
The appellant made a motion to exclude and a motion for a directed verdict following completion of the State's evidence.
The appellant then presented the testimony of Mary Louise Evans and Willie James Swanson, both of whom testified that they had come by the Fears' residence and knocked on the door and spoken to Nancy on Monday, January 17, 1983.
 I
The appellant first asserts that the evidence was insufficient to support the jury's verdict of murder as there was no specific intent to kill established from the evidence.
This argument, however, ignores the testimony of Bessie Springer, who testified that she observed the appellant strike the victim with a brick on the forehead and "knocked her out cold". Moreover, the appellant's own statement clearly established that he struck the victim with a chair across the back. Dr. Gilchrist's testimony established that her injuries to her back and lower intestines were consistent with being struck with a chair across the back. We are therefore clear to the conclusion that the necessary "positive intent" was fully established through the nature of the assault on the victim by the appellant. Swann v. State, 412 So.2d 1253 (Ala.Cr.App. 1982); Tucker v. State, 383 So.2d 579 (Ala.Cr.App. 1980), cert. denied, 383 So.2d 586 (Ala. 1980).
As noted in these cases, "An intent to cause the death of the deceased may be inferred from the character of the assault, the use of a deadly weapon and all other attending circumstances surrounding the death of the deceased." *Page 388 
 II
The appellant contends that his first statement given to Auburn Detective Kolander on the morning of January 18, 1983, was not voluntary because the appellant had been drinking. Detective Kolander did testify that in his experience as a police officer, the appellant was in control of his mental processes and understood what was being said and made proper responses. While it is true that Detective Kolander testified he noted the odor of alcohol on the appellant's breath, he also testified that, in his opinion, the appellant was sober.
The trial court determined from the testimony that the appellant had received a proper warning of his constitutional rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). The trial court also determined that there had been no threats, coercion, offers of reward, or other improper inducement to obtain appellant's statement. In this first statement, his testimony was very similar to a statement given approximately a week later on January 25, 1983, also at Auburn Police Headquarters, at approximately 1:45 in the afternoon. Again, appellant's constitutional rights were read to him and he executed a waiver form. Again, the testimony indicates that the appellant was not threatened, intimated or otherwise induced to give his statement. The testimony of Detective Kolander also indicates that the appellant fully understood the questioning and understood what was going on. There was, therefore, a proper basis for the trial court to determine that the appellant's statement was purely voluntary. We likewise, from our examination of this record, find that the appellant's statement was here voluntary and there was no improper threat or inducement made or given to obtain this statement. Sheppard v. State, 49 Ala. App. 674, 275 So.2d 353
(1973).
 III
Finally, the appellant argues that the trial court should have charged the jury on the question of criminally negligent homicide and that the failure to do so constituted reversible error.
We have carefully reviewed the trial court's oral charge and note that in two instances on record 167 and again on record 170-171, after extensions, that appellant's counsel announced "satisfied" on both occasions. Moreover, counsel did not submit any written charge or charges on this issue.
The law is clear that a request for charges to the trial court must be submitted in writing and prior to the jury's retirement. Evans v. State, 338 So.2d 1033 (Ala.Cr.App. 1976).
Moreover, counsel must tender such written charges in writing as there is no longer an automatic exception to written charges unless such is made by counsel by stating such charge to the trial court and making exception to the court's refusal to give such charge. Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981), affirmed, 414 So.2d 993 (Ala. 1982). The failure, therefore, to tender such charges and preserve same for review by appropriate exception precludes this court's review. Allen, supra, and Hillv. State, 409 So.2d 943 (Ala.Cr.App. 1982).
Moreover, charges on criminally negligent homicide would have been inappropriate under the evidence here as established at trial. See Quates v. State, 439 So.2d 199 (Ala.Cr.App. 1983) and authorities cited.
We have carefully examined this record and find no error. The judgment is therefore affirmed.
AFFIRMED.
All the Judges concur. *Page 389