[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 848 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 849 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 850 
The appellant, Larry Eugene Hutcherson, was convicted of capital murder for the 1992 killing of Irma Thelma Gray and was sentenced to death. On appeal, this court affirmed the conviction and death sentence. 677 So.2d 1174 (Ala.Crim.App. 1994). The Alabama Supreme Court reversed this court's judgment, holding that the improper admission of DNA evidence was not harmless error. 677 So.2d 1205 (Ala. 1996). On April 19, 1996, this Court remanded the case to the trial court for proceedings consistent with the supreme court's opinion. 677 So.2d 1210 (Ala.Cr.App. 1996).
On remand, the appellant pled guilty to and was convicted of murder, made capital because the murder was committed during the course of burglary, see § 13A-5-40(a)(4), Ala. Code 1975. The appellant was examined by Dr. C. Van Rosen, a clinical forensic psychologist, who determined that the appellant understood the consequences of entering the guilty plea. The trial court then engaged in a colloquy with the appellant in which the appellant admitted his guilt and expressed *Page 851 
his desire to enter a guilty plea, despite the advice of his attorneys. After the appellant entered his guilty plea, the matter was presented to a jury so that the jury could determine whether the State had proven its case against the appellant beyond a reasonable doubt. The jury returned a verdict of guilty, and the penalty phase proceedings began. By a vote of eleven to one, the jury recommended the death penalty. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
The appellant's guilty plea was taken pursuant to the provisions of § 13A-5-42, Ala. Code 1975, which provides as follows:
 "A defendant who is indicted for a capital offense may plead guilty to it, but the state must in any event prove the defendant's guilt of the capital offense beyond a reasonable doubt to a jury. The guilty plea may be considered in determining whether the state has met that burden of proof. The guilty plea shall have the effect of waiving all non-jurisdictional defects in the proceeding resulting in the conviction except the sufficiency of the evidence. A defendant convicted of a capital offense after pleading guilty to it shall be sentenced according to the provisions of section 13A-5-43(d)."
This statute distinguishes a guilty plea entered in a capital case from a guilty plea entered in a noncapital case. We interpret the phrase "proceeding resulting in conviction" to mean the guilt phase of a capital trial. Therefore, we read this statute to provide that, in a capital case, a guilty plea shall have the effect of waiving all non-jurisdictional defects, except the sufficiency of the evidence, occurring before and during the guilt phase of the trial. Thus, the appellant's argument that his guilty plea acts only as a bar to non-jurisdictional defects arising prior to the entry of the guilty plea is without merit.
We have reviewed the proceedings prior to and during the guilt phase of the trial for jurisdictional errors. In addition, we have reviewed the penalty phase proceeding for any error, whether preserved or plain, as required by Rule 45A, Ala. R.App. P., which provides as follows:
 "In all cases in which the death penalty has been imposed, the court of criminal appeal shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
In Haney v. State, 603 So.2d 368, 392 (Ala.Cr.App. 1991), aff'd,603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925,113 S.Ct. 1297, 122 L.Ed.2d 687 (1993), this court stated as follows:
 "The Alabama Supreme Court has adopted federal case law defining plain error, holding that "`[Plain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings,' Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 164 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 1Z67 (1983) (quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th cir. 1981))."
"The plain-error exception to the contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" United Statesv. Young, 470 U.S. 1, 15, 105 So.Ct. 1046, 84 L.Ed.2d 1,14 (1985), quoting United States v. Frady, 456 U.S. 152, 163,102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). To find plain error, a reviewing court must find that "the claimed error not only seriously affected `substantial rights,' but that it had and unfair prejucical impact on the jury's deliberations." Young,470 U.S. at 18, n. 14, 105 S.Ct. at 1047, n. 14, 84 L.Ed.2d. at 14.
 I
The appellant's first argument is that the evidence was insufficient to support the finding of the jury that the state met its burden of proving the elements of capital murder beyond a reasonable doubt. Although his argument is couched in terms of the weight of the evidence, we will treat this *Page 852 
as a sufficiency of the evidence argument because all other non-jurisdictional defects, if any, occurring during the guilt phase of the trial were waived by the appellant's guilty plea.
The evidence introduced trial showed that the appellant intended to burglarize a house. The officer who took the appellant's statement following his arrest read the statement into evidence as follows:
 "I killed her. He stated that he went to the house on Wednesday night, or it could have been early Thursday morning, might have been after 12:00 o'clock. I had just left the Tarpon and was looking for a house to break in as I walked west of Moffatt Road. I picked that house because there were no cars in the driveway and it was dark. I went in the bathroom window. That is not too clear, because I had taked five Valiums and drank a lot of whiskey. I knew that I knocked the pane out of the window to get in. I remember I cut my arm when I broke out the garage window.
 "I had been in the house for a while before I saw the old lady, who just showed up in the kitchen. I asked her where was her money and jewelry. She wouldn't tell me and began to try to get out of the back door. I kept pulling her back and I cut her throat. I took off her pants and poured powder over which I found in the bathroom. I tried to get the car started, but it wouldn't. I left and called my mamma to pick me up. She picked me up on Moffatt Road.
 "I went back into the house Thursday night. I had passed several times during the day and saw no one had found her. I went through part of the house that I didn't go through Wednesday night. This is when I took out the air condition (sic) and the rest of the stuff and put it next to the fence. I got Hardy to stop after leaving the Tarpon Friday morning and picked up the stuff. Most of the stuff might have left town by now. I sold some and I just almost gave some away to people I owed. The air conditioner I know is still here. I know where it is. It is at my stepdaddy's house, Jackie Lang. The microwave, I know where it is, but she is related to my wife and I wouldn't want to get her involved. But I know it is there. Now, I feel better I have told you."
(R. 1158-60).
The appellant contends that he was too intoxicated to form the specific intent to murder the victim. This court has previously addressed this issue:
 "The question whether a defendant's intoxication rendered it impossible for the defendant to form a particular mental state is also a question for the jury. See Ex parte Bankhead, 585 So.2d 112, 121
(Ala. 1991). Evidence of intoxication, whether voluntary or involuntary, is admissible when it is relevant to negate an element of the offense charged. § 13A-3-2(a). `Voluntary drunkenness does not excuse crime, yet its excessiveness may produce such a mental condition as to render the intoxicated person incable of forming a specific intent.' Lovette v. State, 491 So.2d 1034, 1039
(Ala.Cr.App.), cert. denied, 491 So.2d 1039
(Ala. 1986) (quoting State v. Massey, 20 Ala. App. 56, 58, 100 So. 625, 627 (1924)). The degree of intoxication required to establish that a defendant was incapable of forming an intent to kill is a degree so extreme as to render it impossible for the defendant to form the intent to kill. Ex parte Bankhead, 585 So.2d at 121. The law concerning intoxication resulting from drug use is the same as intoxication resulting from alcohol. Hooks v. State, 534 So.2d 329 (Ala.Cr.App. 1987)."
Williams v. State, 710 So.2d 1276, 1338 (Ala.Cr.App. 1946). The trial court properly submitted to the jury the issue of the effect of the appellant's intoxication on his ability to form a specific intent. Furthermore,
 "`[a]n intent; to cause the death of the deceased may be inferred from the character of the assault, the use of a deadly weapon and all other attending circumstances surrounding the death of the deceased.' Fears v. State, 451 So.2d 386, 387
(Ala.Crim.App. 1984). See also Swann v. State, 412 So.2d 1253 (Ala.Crim.App. 1982); Tucker v. State, 383 So.2d 579 (Ala.Crim.App.), cert. denied 383 So.2d 586 (Ala. 1981)." *Page 853 
Weaver v. State, 678 So.2d 260, 277 (Ala.Cr.App. 1995), rev'd,678 So.2d 284 (Ala. 1996).
 "In Jones v. State, 591 So.2d 569, 574 (Ala.Cr.App. 1991), this court stated:
 "`"[T]he element of intent, being a state of mind or mental purpose, is usually incapable of direct proof [and] it may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances." Johnson v. State, 390 So.2d 1160, 1167 (Ala.Cr.App.), cert, denied, 390 So.2d 1168 (Ala. 1980). Accord, Fears v. State 451 So.2d 385, 387 (Ala.Cr.App. 1984) Young v. State, 428 So.2d 155, 158 (Ala.Cr.App. 1982).'
Additionally, in Bishop v. State, 482 So.2d 132, 1326
(Ala.Cr, App. 1985), this court held:
 "`"Intent may be presumed from the act of using a deadly weapon. McArdle v. State, 372 So.2d 897
(Ala.Crim.App.), cert. denied, 372 So.2d 907 (Ala. 1979), and from the character of the assault, including the nature and amount of force used in the fatal injury. Flint v. State, 370 So.2d 332 (Ala.Crim.App. 1979)."
 "`Chaney v. State, 417 So.2d 625, 627 (Ala.Crim.App. 1982). "However, this evidence must be sufficient to allow the jury to conclude, by fair inference, that the appellant was shooting at the person (named in the indictment) in particular with the intent to murder him." Free v. State, 455 So.2d 137
(Ala.Crim.App. 1984). In Underhill on Criminal Evidence, § 540 (3d ed. 1923), we find the following statement regarding proof of intent in an attempted murder charge:
 "`"Thus, as a general rule, the force or violence which was employed must be proven to have been intentional. . . . The entention to do great bodily harm, to murder or commit any other crime by means of an assault, may be inferred from the circumstances. Circumstantial evidence is usually the only available evidence of intention aside from the declaration of the accused. The intention may be inferred from the force or direction, or from the force or direction, or from the natural contemplated result of the violence employed, from the weapon or implement used by the accused, from his threats or prior conduct towards the person assaulted, and generally from the extent and effect of the injury inflicted, or from any deliberate action which is naturally attempted and usually results in danger to the life of another."'"
Long v. State, 668 So.2d 56, 60 (Ala.Cr.App. 1995). Finally,
 "`[I]ntent may be inferred from the use of a deadly weapon. Fears v. State, 451 So.2d 385
(Ala.Crim.App. 1984); Young v. State, 428 So.2d 155
(Ala.Crim.App. 1982). . . . Further, circumstantial evidence alone may be sufiicient in conjunction with otiher facts and circumstances which tend to connect the accused with the commission of the crime to sustain a conviction. Dolvin v. State, 391 So.2d 133
(Ala. 1980) and cases cited there; Cumbo v. State, 368 So.2d 871 (Ala.Crim.App. 1979), cert. denied, 368 So.2d 877 (Ala. 1979).'"
Buskey v. State, 650 So.2d 605, 609 (Ala.Cr.App. 1994). Based upon the circumstances surrounding the victim's death, the appellant's use of a deadly weapon, and the victim's injuries, as set forth more fully in Part V herin, we conclude that the evidence presented by the State was sufficient to prove that the appellant had the specific intent to kill the victim.
Although there is no evidence that the appellant intended to murder the victim when he entered the house, the evidence supports the conclusion that he intentionally murdered her once she entered the kitchen and refused to give him her money and jewelry. The murder was committed during the course of, and in furtherance of, a burglary and was part of a continuous chain of events. Harris v. State, 671 So.2d 125 (Ala.Cr.App. 1995) Thus, it was not necessary for the appellant to intend to murder the victim when he entered the house. Moreover, intent to kill may be inferred from the fact that the appellant used a deadly weapon in attacking the victim and from the circumstances attending the victim's death. Perry v. State, 647 So.2d 71 (Ala.Cr.App. 1994);Cartwright v. State, 645 So.2d 326 (Ala.Cr.App. 1994); Oryang v.State 612 So.2d 989 *Page 854 
(Ala.Cr.App. 1994). Accordingly, viewing the evidence in a light most favorable to the State, we find that the State presented sufficient evidence that appellant's guilt and that the trial court properly submitted the case to the jury.
 II
The appellant's second argument is that the trial court erred in refusing to charge the jury on the lesser included offense of felony murder. After the State rested, the appellant asked the trial court to instruct the jury on the lesser included offense of felony murder because there was evidence that he did not intend to commit a murder at the time he committed the burglary. In response, the trial court stated as follows:
 "Okay. Let me tell you what I think. And you tell me. I mean, this is — I have the one case that I know of that's been decided on this issue.
 "This is a guilty plea. This is not a trial. I don't think he is entitled to be convicted on lesser-included offenses on a guilty plea to a capital case. If the jury decided that the State didn't prove beyond a reasonable doubt, what I would do is let him — set aside the plea and try the case on the merits. I mean, that's — unless the State has some objection, that's going to be the procedure that I would employ. Because this is not, in fact, a trial. The State, under the statute, must prove beyond a reasonable doubt that the Defendant committed the capital offense.
 "I will mention to the jury that if there are lesser-included offenses, then they would not return a verdict of guilty. Although the opinion that was decided refers to other possible verdicts.
". . . .
 "I am not going to allow Defendant to take advantage of a situation where we have not tried the case but have tried it as a guilty plea."
Although this was a non-juridictional matter which was waived by the appellant's guilty plea, we note that the trial court's, analysis was correct. As the State correctly, asserts, the jury was empaneled to determine only whether the State had proven beyond a reasonable doubt that the appellant was guilty of burglary-murder. Therefore, the appellant was not entitled to have the jury instructed on lesser included offenses.
 III
The appellant's third argument is that the penalty phase closing argument by the State, taken as a whole, was calculated to inflame the passions of the jury. Initially, we note that the jury was repeatedly instructed that statements made by attorneys were not evidence and that it was required to make its decision based upon the evidence presented during the proceedings. Also, the trial court instructed the jury not to base its decision on passion, prejudice, or any other arbitrary factor, The jury is presumed to follow the instructions given by the trial court.Taylor v. State, 666 So.2d 36 (Ala.Cr.App. 1994), aff'd,666 So.2d 73 (Ala. 1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928,133 L.Ed.2d 856 (1996).
We must evaluate the allegedly improper comments made by the prosecutor in the context of the entire proceeding. Duren v.State, 590 So.2d 360 (Ala.Cr.App. 1990), aff'd, 590 So.2d 369
(Ala. 1991), cert. denied, 503 U.S. 971, 112 S.Ct. 1594,118 L.Ed.2d 310 (1992), "`In judging a prosecutor's closing argument, the standard is whether the argument so infected the trial with unfairness as to make the resulting conviction a denial of due process,'" Daren v. Wainwright, 477 U.S. 168, 181,106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting Donnelly v.DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431
(1974)).
 "In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State 509 So.2d 252, 256 (Ala.Cr.App. 1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App. 1983); Carpenter v. State, 404 So.2d 89, 97
(Ala.Cr.App. 1980), cert. denied, 404 So.2d 100 (Ala. 1981). Moreover, this Court; has also held that statements of counsel in argument to the *Page 855 
jury must be viewed as delivered in the heat of debate; such statements are usually valued by the, jury at their true worth and are not expected to become factors in the formation of the verdict. Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App. 1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App. 1982). . . ."
Bankhead v. State 585 So.2d 97, 106 (Ala.Cr.App. 1989), aff'd. in relevant part, remanded on other grounds, 585 So.2d 112, 127
(Ala. 1991), aff'd. on return to remand, 625 So.2d 1141
(Ala.Cr.App. 1992).
 "`During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.' Rutledge v. State, 523 So.2d 1087, 1100 (Ala.Cr.App. 1987), rev'd on the other grounds, 523 So.2d 1118 (Ala. 1988) (citation omitted). Wide discretion is allowed the trial court in regulating the arguments of counsel. Racine v. State, 290 Ala. 225, 275 So.2d 655 (1973). `In evaluating allegedly prejucicial remarks by the prosecutor in closing argurment, . . . each case must be judged on its own merits,' Hooks v. State, 534 So.2d 329, 354 (Ala.Cr.App. 1987) aff'd, 534 So.2d 371
(Ala. 1989), cert. denied, U.S. 1050 [, 109 S.Ct. 883, 102 L.Ed.2d 1005] (1988) (citations omitted) (quoting Barnett v. State, 52 Ala. App. 260, 264, 291 So.2d 353, 357 (1974)), and the remarks must be evaluated in the context of the whole trial, Duren v. State, 590 So.2d 360 (Ala.Cr.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991). `In order to constitute reversible error, improper argument must be pertinent to the issues at trial or its natural tendency must be to influence the finding of the jury.' Mitchell v. State, 480 So.2d 1254, 1257-58 (Ala.Cr.App. 1985) (citations omitted). `To justify reversal because of an attorney's argument to the jury, this court must conclude that substantial prejudice has resulted.' Twilley v. State, 472 So.2d 1130, 1139 (Ala.Cr.App. 1985) (citations omitted)."
Coral v. State, 628 So.2d 954, 985 (Ala.Cr.App. 1992).
 A
The appellant first contends that the following statement made by the prosecutor was improper:
 "[F]or forty-five years she lived there raising two children in that house. She lived in that house for thirty-three years by herself. . . . She was not a frail eighty-nine-year-old woman. . . . she obviously got out and got around. . . . In fact, the night the Defendant broke into her house and executed her, she was out. She had been somewhere else and came back into the house."
(R. 308-09).
At trial, the appellant objected only to the portion of the statement about what the victim had been doing prior to the murder because there was no testimony to that effect before the jury. However, it is reasonable to infer that the victim had been out the night of the murder from the appellant's own statements to the police. He indicated that he chose the victim's house because there was no car in the driveway and there were no lights on inside the house. He went in and turned on all of the lights, and later the victim "just showed up" in the kitchen. After he killed her, he stated that he attempted to drive away in her car, but he could not get it started. Therefore, the prosecutor's statement that the victim had been out the night of the murder was based upon a reasonable inference from the appellant's own statement to the police.
Furthermore, the comments about the victim were properly introduced to help the jury determine what punishment should be imposed and to rebut the mitigation evidence offered by the appellant.
 "Just over a year ago, the United States Supreme Court held that a prosecutor may present and argue evidence relating to the victim and the impact of the victim's death on the victim's family in the penalty phase of a capital trial. Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Payne overruled Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), which had prohibited the introduction of such evidence at the *Page 856 
penalty phase, and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), which had prohibited the argument of such evidence at the penalty phase. The Court's decision in Payne
was based in large measure on the premise that this type evidence related to the harm done by the defendant and consequently, was a valid consideration in determining the punishment to be imposed. The Court also noted that, in fairness to the State, it was necessary to allow the prosecutor to rebut, to some extent, the wide variety of mitigation evidence that can be offered at the penalty phase by capital defenant. 501 U.S. at 824-27, 111 S.Ct. at 2608-09."
McNair v. State, 653 So.2d 320, 331 (Ala.Cr.App. 1992), aff'd,653 So.2d 353 (Ala. 1994), cert. denied, 513 U.S. 1159,115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995). In addition, the trial court immediately instructed the jury that statements made by the attorneys were not evidence and that it should disregard any statements by attorneys that differed from the evidence presented during the trial. Thus, the prosecutor's statement was not improper.
 B
The appellant also contends that the following comment made by the prosecutor was improper:
 "But he didn't just slit throat. He beat her. At four foot eleven, a shade over a hundred pounds, eighty-nine, years old, he threw her down on the floor and stomped her."
(R. 310-11). When defense counsel objected, the trial court promptly instructed the jury as follows:
 "All right. Well, ladies and gentlemen, you be guided by your recollection of the evidence, because you base your verdict on the evidence — not the statements made by the attorneys — and the, just and reasonable inferences from the evidence."
(R. 312). The prosecutor then withdrew the remark and continued his argument. A little later in his closing argument, the prosecutor explained his remark about the victim's having been stomped as follows:
 "Now stomping might be — imply that, you know, jumping up and down on somebody with your fist, but it can also imply just about having the life beat out of you. And that's what happened. He put her down and he beat her."
(R. 313). In his statement to the police, the appellant admitted that he "had [the victim] on the floor" just before he slit her throat. The medical examiner's testimony, as summarized more fully in Part V of this opinion, indicates that the victim was severely beaten over much of her body before her throat was slit, and that she suffered numerous injuries as a result of the beating. He stated that it was possible that she could have sustained some of her injuries if she had been pushed or forced to the floor. Although there was no direct testimony that the appellant; "stomped" the victim, there is overwhelming evidence that he viciously beat her before slitting her throat. As the prosecutor explained, the term "stomped" could be interpreted to be a euphemism for a beating. Furthermore, the trial court promptly instructed the jury that it should base its decision on its recollection of the evidence and not on the statements by the attorneys. The trial court's prompt instruction to the jury eliminated any prejudice that may have resulted.McMillian v. State, 594 So.2d 1253, 1267-68
(Ala.Cr.App. 1991). Finally, we must review the comment as having been made during the heat of debate. Viewing the remark in the context of the prosecutor's entire argument, we do not find the comment to be improper.
 C
The appellant also contends that the following comments made by the prosecutor were improper:
 "He gets his mother to come in and say, `Please, don't give my son the electric chair, lock him away for life.' Don't you think Thelma Gray's family would have loved to have the opportunity before Larry Hutcherson —
". . . .
 "Larry Hutcherson is getting the benefit of a trial by y'all. That is not something that he gave Thelma Gray that night." *Page 857 
(R. 317-18). We find these remarks to be a call for justice and not a call for sympathy as the appellant contends.
 "The appellant contends that the following comments by the prosecutor in closing argument constituted an improper appeal to the jury to have sympathy for the victim: `[n]obody went out and empaneled a jury for Kim Hill'; `[y]ou can look at Ward Gentry, but, you cannot look at Kim Hill'; `nobody went; out and got a judge for Kim'; `nobody went out and got two lawyers for Kim'; and `[h]e was her judge, and her jury, and her executioner.' He argues that comments `impermissbly influenced the jury to disregard [its] legal duties and render a guilty verdict because of [its] sympathy for the deceased.' We do not agree. We view the comments as a call for justice, not sympathy, and, thus conclude that they are within the latitude allowed prosecutors in thier exhortation to the jury to discharge its duties. Ex parte Waldrop, 459 So.2d 959 (Ala. 1984), cert. denied, 471 U.S. 1040, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); Rutledge v. State. The comment that Gentry was `her judge, her jury, and her executioner' was the prosecutor's impression and opinion derived from the evidence in the case, which he could legitigimately argue. Henderson v. State, 584 So.2d 841 (Ala.Cr.App. 1988)." Galloway v. State, 484 So.2d 1199 (Ala.Cr.App. 1986)."
Gentry v. State, 689 So.2d 894, 906 (Ala.Cr.App. 1994), rev'd on other grounds, 689 So.2d 916 (Ala. 1996). Therefore, we find no error in the prosecutor's remarks.
 D
The appellant also contends that the following remarks made by the prosecutor were improper:
 "Mr. Powell, asked a very interesting, I guess you call it, euphorical (sic) question: `What is worse than dying in the electric chair?' How about being beaten, tortured and murdered in your own home? Why don't we start there with what is worse than dying in the electric chair."
Just before the prosecutor made this statement defense counsel argued as follows:
 "You have the awesome responsibility and duty now to go back and decide whether or not the mitigating circumstances in this case far outweigh the aggravating circumstance. And I'll submit to you that the only one they proved beyond a reasonable doubt is the burglary. The fact that this man committed the burglary, if that's a given, and it is a given, does the fact he committied a burglary outweigh all of these things? Because that's what you have to find in order to sentence him to death by electrocution. Death by electrocution is exactly what it is. It's death. It's nothing else just like he would never be released from prision, he will die in the electric chair. There is nothing in between.
 "The Ten (Commandments say: `Thou shalt not kill.' And `Vengeance is mine, saith the Lord.' We're not here for vengeance; it is not our province. It's not our responsibility. Larry Hutcherson violated the Ten Commandments that say thou shalt not kill. But a vengeful act of taking his life in light of this, versus this, is wrong. "What's the alternative? What's better? What's worse than dying in the electric chair? Is spending the rest of your life, with your twenty-seven-year-old, tortured soul behind bars, is that better fate? It may or may not be; but his death wouldn't be on anybody's hands. He doesn't deserve to die. You are not letting him go, you are sending him to the penitentiary for the rest of his natural life. The Lord can deal with his soul. That's not for us."
The prosecutor's argument was made in response to defense counsel's arguments urging the jury not to sentence the appellant to die in the electric chair. Thus, it was a proper reply in kind to the arguments made by the appellant's attorney. Brooks v.State, 695 So.2d 176 (Ala.Cr.App. 1996), aff'd, 695 So.2d 184
(Ala. 1997); Ex parte Land, 678 So.2d 224 (Ala.), cert. denied, ___ U.S. ___, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996).
 E
The appellant further contends that the following comment by the prosecutor was improper: "He left that body in the house and he came back and he stole some more." *Page 858 
(R. 316). Immediately following the appellant's objection that the comment was an inappropriate attempt to prove an aggravating circumstance, the trial court instructed the jury as follows: "Well, I'll tell you what the law is, ladies and gentlemen, when the appropriate time comes." (R. 316). The comment is consistent with the statement the appellant made to the police when he was arrested. Furthermore, it was an appropriate comment on the evidence presented at trial. Finally, the state has the burden of refuting the mitigating evidence offered by the appellant. Therefore, we find no error in the prosecutor's statement.
 F
The appellant also contends that the following statement made by the prosecutor was improper:
 "Loved by his family. Sure he's loved by his family. And they all came to court. And Mrs. Gray's family came to court too. No doubt they loved her. So what? So what if he is loved by his family. Obviously loved by his mother. So what?"
(R. 355-56). At trial, defense counsel argued that the prosecutor was telling the jury essentially to disregard a mitigating circumstance. However, the trial court, overruled the objection, stating, "He didn't tell them to disregard it." The appellant, had previously offered evidence of mitigating circumstances regarding his family life and history. Pursuant to §13A-5-45(g), it is appropriate for the State to attempt to disprove a mitigating circumstance offered by the appellant. Furthermore, the trial court correctly noted that the prosecutor did not tell the jury to disregard the mitigating circumstance. Finally, the comment was made in response to the appellant's arguments regarding mitigating circumstances. Therefore we find no error in the prosecutor's comment.
 G
The appellant finally contends that the cumulative effect of all of the allegedly improper comments made by the prosecutor was to infect the proceedings with ineradicable prejudice. Taking the comments in the context of the trial as whole we find that they did not "create any atmosphere of bias and prejudice which no remarks by the court could eradicate," as the appellant contends. Thus, we find the appellant's contentions regarding improper comments during the prosecutor's penalty phase closing argument to be without merit.
 IV
The appellant's fourth argument is that the trial court erred in dismissing certain jurors solely on the basis of their race. After the jury was struck, the appellant made a Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), objection, arguing that the state improperly struck certain potential jurors for racially motivated reasons. After the prosecutor stated his reasons for the allegedly improper strikes, the trial court determined that three potential jurors, all of whom were black, had been improperly struck by the State. The trial court then removed three white females from the jury and replaced them with the three black individuals who had been improperly struck by the state. The appellant never objected to this procedure in the trial court. Because this same jury heard the penalty phase of the proceeding, we will review this claim for plain error.
The appellant specifically asserts in his reply brief to this court that "[n]o claim of gender-based discrimination has been raised by appellant." Rather, he argues that jurors may not be struck solely on the basis of their race. Although the striking of the three white jurors may have been done based upon their race and may have violated their right to serve, we cannot hold that it was "plain error" because we fail to see how the striking of these jurors affected any substantial right of this appellant. The appellant has not shown us how, nor can we see how, he was prejudiced by the replacement of the three white jurors with three black jurors. Defense counsel objected to the state's striking of the three black jurors, and the trial court found the reasons for the strikes to be improper. The trial court then stated its intent to remove three white jurors and to seat the three black jurors instead. During this exchange, the appellant made no objection *Page 859 
to the remedy fashioned by the trial court. This case is unusual because the appellant pled guilty, to the capital offense. Technically, the appellant was not "on trial" as that phrase is normally used. Rather, the state was required to prove the appellant's guilt to a jury beyond a reasonable doubt, and it was allowed to use the appellant's guilty plea as evidence of his guilt. The appellant has failed to show that the replacement of the three white jurors with the three black jurors substantially and prejudicially affected his legal rights. Thus we find that there is no "plain error" under the unique circumstances of this case.
 V.
The appellant's fifth argument is that the trial court erred in finding as an aggravating circumstance that the offense was especially heinous, atrocious, or cruel when compared to other capital offenses. Specifically, he contends that the state did not introduce evidence of and the trial court did not take judicial notice other capital cases in which the death penalty was imposed for comparison with this case. Because the appellant did not raise this issue at trial, we will review it under the plain error standard.
 "In Ex parte Kyzer, 399 So.2d 330, 334 (Ala. 1981), this Court held that the standard applicable to the `especially heinous, atrocious, or cruel' aggravating circumstance under § 13A-5-49(8) is that for a crime to fit within that section it must be one of `those conscienceless or pitiless homicides which are unnecessarily torturous to the victim.'
". . . .
 ". . . [O]n the issue of aggravating circumstances, Bankhead suggests that the jury should have had the opportunity to compare the capital offenses in this case with other capital offenses for purposes of § 13A-5-49(8).
 "Although a very narrow and literal reading of the statute may suggest that such a comparison is required, it would be virtually impossible for the court to implement. Charging the jury on pertinent facts of `other capital cases' would unduly burden the court. It would be unworkable for the court and would thoroughly confuse the jury.
 "This Court has decided upon an approach for the purposes of § 13A-5-49(8). In comparing capital offenses for the purposes of determining whether a capital offense was `especially heinous, atrocious or cruel,' the court uses the Kyzer standard. Capital offenses falling under § 13A-5-49(8) are, pursuant to the Kyzer standard, those `conscienceless or pitiless homicides which are unnecessarily torturous to the victim.' Kyzer, 399 So.2d at 334."
Ex parte Bankhead, 585 So.2d 112, 124-25 (Ala. 1991), aff'd. on return to remand, 625 So.2d 1141 (Ala.Cr.App. 1992), rev'd on other grounds, 625 So.2d 1146 (Ala. 1993).
In its order addressing the statutory aggravating circumstance that the offense was especially heinous, atrocious, or cruel, the trial court noted:
 "The brutality of the crime was graphically depicted by Dr. Riddick, the state Medical Examiner. Dr. Riddick testified that Mrs. Gray died as a result of at least four sharp force injuries to the neck, which were so severe that Mrs. Gray was nearly decapitated. The Doctor further testified to the presence of bruises on Mrs. Gray's face and shoulder, her fractured nose, and numerous broken ribs. These injuries occurred before her throat was cut.
". . . .
 As previously noted, Dr. Riddick discovered and documented a litany of injuries which occurred prior to the victim's death. More specifically, he testified to the presence of the following injuries: a two and one half inch by three inch injury to back of her left shoulder, a one-half-inch tear to the left side of her head, a four-inch large black eye, two small quarter-inch buises to her forehead, a broken nose, a half-inch tear to the left side of her nose, a couple of small bruises on her lips, lacerations and abrasions to the chin area, a ten-inch cut across her throat and through her windpipe and carotid artery, a four-inch, one-and-one-half-inch, and a three-inch cut on the left side of her neck area, a small bruise to the left chest, an abrasion to the *Page 860 
left knee, a two-inch bruise on the back of her left arm, bruises to her left hand, a two-and-one-half-inch scrape abrasion, and quarter-inch abrasions to her right hand.
Dr. Riddick, who performed the autopsy, testified that the victim also had several broke ribs and other injuries that were consistent: with a beating. He also testified that the beating and the accompanying injuries occurred before the victim died. He described two cuts to the victim's neck, one of which substantially contributed to her death. He also testified that her death was not instantaneous and that she was alive for at least three minutes after neck was cut. Finally, in a statement made to the police following the murder, the appellant stated, "I had her on the floor and she was saying, `Please, you don't want to do this.'" When asked if the victim was pleading with him not to do it, he replied that she was. Clearly, the trial court did not err in finding that the circumstances surrounding the murder were "especially heinous, atrocious, or cruel." Hutcherson v.State, 677 So.2d 1174, 1200 (Ala.Cr.App. 1994), rev'd on other grounds, 677 So.2d 1205 (Ala. 1996); Ex parte Bankhead; Hendersonv. State, 583 So.2d 276, 304 (Ala.Cr.App. 1990), aff'd,583 So.2d 305 (Ala. 1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268,117 L.Ed.2d 496 (1992); Ex parte Kyzer, 399 So.2d 330 (Ala. 1981).
 VI
The appellant's sixth argument is that the trial court erred in allowing photographs of the victim into evidence, the sole purpose of which was to inflame the passions of the jury. We addressed this issue when this case was previously before this court: "At the penalty phase the prosecutor had the burden of proving any statutory aggravating circumstances. The photographs of the victim's body were relevant to proving the aggravating circumstance that the crime was `espcially heinous, atrocious, and cruel.' Bankhead v. State, 585 So.2d 97 (Ala.Cr.App. 1989), remanded on other grounds, 585 So.2d 112 (Ala.), on remand585 So.2d 133 (1991).
 "`" [P]hotographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors." Ex parte Siebert, 555 So.2d 780, 784 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See generally C. Gamble, McElroy's Alabama Evidence, § 207.01(2) (4th ed. 1991). "The photographs of the victim were properly admitted into evidence. Photographic exhibits are admissible even though they may be cumulative, . . . demonstrative of undisputed facts, . . . or gruesome . . ." Williams v. State, 506 So.2d 368, 371 (Ala.Cr.App. 1986), cert. denied, 506 So.2d 372 (Ala. 1987).'"
 DeBruce v. State, 651 So.2d 599, 607 (Ala.Cr.App. 1993). See also Ex parte Bankhead, 585 So.2d 112 (Ala. 1991). The court did not err in allowing photographs of the victim's body to be received into evidence."
Hutcherson v. State, 677 So.2d 1174, 1200 (Ala.Cr.App. 1994), rev'd on other grounds, 677 So.2d 1205 (Ala. 1996). See alsoGiles v. State, 632 So.2d 568 (Ala.Cr.App. 1992); Haney v. State,603 So.2d 368 (Ala.Cr.App. 1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297,122 L.Ed.2d 687 (1993). In this case, the appellant contends that he did not intend to murder the victim. The photographs were relevant to show the viciousness of the offense and to rebut the appellant's contention that he did not intend to kill the victim. Accordingly, the trial court did not err in allowing the photographs to be admitted into evidence.
 VII
Pursuant to § 13A-5-53, Ala. Code 1975, this court must address the propriety of the appellant's conviction and sentence of death. The appellant was indicted for and was convicted of capital murder because the murder was committed during the course of a burglary. § 13A-5-40(a)(4), Ala. Code 1975.
The record reflects that the sentence of death was not imposed as the result of the influence of passion, prejudice, or any other arbitrary factor. § 13A-5-53(b)(1), Ala. Code 1975.
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. The trial court found two *Page 861 
aggravating factors: 1) the murder was committed while the appellant was engaged in a burglary, § 13A-5-49(4), and 2) the offense was especially heinous, atrocious, or cruel, §13A-5-49(8). The trial court found the following nonstatutory mitigating circumstances: 1) the defendant's mother, as a result of multiple relationships with other men and numerous marriages did not provide a nurturing, caring environment and 2) the death of the defendant's adoptive father affected the defendant, and the defendant's attempted suicide suggest a degree of depression at those points in his life. The trial court also found the following statutory mitigating circumstances: 1) the defendant had no significant history of prior criminal activity and 2) the age of the defendant at the time of the crime. The trial court indicated in its order that it considered the other evidence offered by the appellant as mitigation, but found that none of it mitigated the crime. The trial court's findings show that it weighed the aggravating circumstances and the mitigating circumstances and correctly sentenced the appellant death. The trial court's decision is supported by the record and this court agrees with the trial court's findings.
Section 13A-5-53(b)(2) requires this court to weigh the aggravating and mitigating circumstances independently to determine the propriety of the appellant's sentence of death. After an independent weighing of the aggravating and mitigating circumstances, we conclude that the appellant's sentence to death by electrocution is the appropriate sentence.
As required by § 13A-5-53(b)(3), we must determine whether the appellant's sentence was disproportionate or excessive when compared to the penalties imposed in similar cases. The appellant viciously murdered an eighty-nine year old woman during the commission of a burglary. Similar crimes are being punished with the death sentence throughout this state. See e.g. Brooks v.State, 695 So.2d 176 (Ala.Cr.App 1996), aff'd. Ex parte Brooks,695 So.2d 184 (Ala. 1997); Land v. State, 678 So.2d 201
(Ala.Cr.App. 1995), aff'd, 678 So.2d 224 (Ala.), cert. denied, ___ U.S. ___, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996); Barbour v.State, 673 So.2d 461 (Ala.Cr.App. 1994), aff'd, 673 So.2d 473
(Ala. 1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2656,135 L.Ed.2d 1074 (1996); Grayson v. State, 479 So.2d 69 (Ala.Cr.App. 1984), aff'd, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865,106 S.Ct. 189, 88 L.Ed.2d 157 (1985). Thus, we find that the sentence was neither disproportionate nor excessive.
Finally, we have reviewed the record for jurisdictional errors occurring before or during the guilt phase of the trial, and we have searched the record for any error that may have adversely affected the appellant's substantial rights during the penalty phase of the proceedings. We have found no such errors. §13A-5-42, Ala. Code 1975; Rule 45A, Ala.R.App.P.
Accordingly, the appellant's conviction and sentence of death by electrocution are hereby affirmed.
AFFIRMED.
All Judges concur.